Brenda LEWELLING, Relator,

v.

Richard A. BOSWORTH, Judge Presiding 196th District Court of Hunt County, Texas, Respondent.

No. 05-92-01036-CV.

Court of Appeals of Texas, Dallas.

Sept. 9, 1992.

Sharon E. Reynerson, Dallas, for relator.

Brad McCampbell, Emory, for respondent.

Before THOMAS, KINKEADE and CHAPMAN, JJ.

## OPINION

THOMAS, Justice.

This is a mandamus action against the Honorable Richard A. Bosworth arising out of a writ of habeas corpus proceeding filed under section 14.10 of the Texas Family Code. We conclude that Brenda Lewelling (Mother) is entitled to have possession of

her minor son, J.J. Lewelling. Therefore, we conditionally grant the writ.

### FACTUAL BACKGROUND

Mother and Billy Ray Lewelling, the parents of J.J., were divorced in May 1988. At the time of the divorce, the trial court appointed Carl and Melba Lewelling (Paternal Grandparents) managing conservators of J.J. Mother appealed, and the trial court's judgment relative to conservatorship was affirmed by the El Paso Court of Appeals. *See Lewelling v. Lewelling,* 774 S.W.2d 801 (Tex.App.—El Paso 1989), *rev'd,* 796 S.W.2d 164 (Tex.1990). However, the Texas Supreme Court reversed the appellate court judgment and remanded the case to the trial court for rendition of judgment that Mother be named managing conservator. *See Lewelling v. Lewelling,* 796 S.W.2d 164, 168 (Tex.1990).

The supreme court's mandate, which issued on November 15, 1990, reiterated the language of the Court's judgment and stated in relevant part as follows:

> IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:
>
> 1) The judgment of the court of appeals is reversed;
>
> 2) The cause is remanded to the District Court of Hunt County with instructions for rendition of judgment in accordance with the opinion of this Court;
>
> 3) Brenda Lewelling shall recover from Carl and Melba Lewelling, who shall pay, the costs in this Court and in the court of appeals.

Within days, Mother filed an application for writ of habeas corpus with the trial court claiming that the supreme court mandate gave her a superior right to possession of J.J. *See* TEX.FAM.CODE ANN. § 14.-10(a) (Vernon Supp.1992). No further action occurred on the case until August 5, 1991, when the trial court finally entered the judgment previously ordered by the supreme court. The next activity was the entry of an order in October 1991 substituting counsel for Mother. Thereafter, on January 8, 1992, Mother requested a hear-ing on her application for writ of habeas corpus.

The hearing on Mother's application was held on February 11, 1992. After hearing the evidence, the trial court found that there was no serious, immediate question concerning J.J.'s welfare. However, the court found that, by failing to request or obtain a hearing, Mother had constructively relinquished possession of J.J. for more than six months after filing her application for writ of habeas corpus. Thereafter, the trial court denied Mother's requested relief.

### ORDER ESTABLISHING MOTHER'S RIGHT TO POSSESSION

■ Section 14.10(a) of the Family Code provides that, if the right to possession of a child is presently governed by a court order, the trial court shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order. TEX. FAM.CODE ANN. § 14.10(a) (Vernon Supp. 1992). Mother argues that her right to possession attached in November 1990 when the supreme court issued the mandate. Because she filed her petition within days of the issuance of the mandate, she claims that the trial court improperly found that she voluntarily relinquished possession. The Paternal Grandparents argue that, because Mother took no action to obtain a hearing for over a year after she filed her application for writ of habeas corpus, she "constructively relinquished" possession and control of J.J. for a period of more than six months. In making their arguments, both parties assume that the supreme court mandate is the order that gave Mother a right of possession of the child. We disagree with this assumption.

■■ A mandate is the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed, and executed. *Dixie Gas & Fuel Co. v. Jacobs,* 66 S.W.2d 446, 448 (Tex.Civ.App.—Beaumont 1933, writ dism'd). If the trial court refuses to follow the directive of the reviewing court, it may be subject to a man-

damus on these grounds. *See Bilbo Freight Lines, Inc. v. State*, 645 S.W.2d 925, 927 (Tex.App.—Austin 1983, writ ref'd n.r.e.).

■ In this case, the supreme court mandate simply directed the trial court to enter a judgment in accordance with its opinion. The court placed the responsibility of entering the judgment on the trial court because, as it noted, there was a need to include rulings on ancillary matters, such as support, visitation, and the like. *See Lewelling*, 796 S.W.2d at 168–69. These matters appropriately should have been heard by the trial court.[1] In addition, the supreme court may have felt that the trial court, which had continuing jurisdiction, should enter the judgment for purposes of exercising its continuing jurisdiction.

■ ■ The trial court may have been waiting for the parties to ask for a trial setting for the purpose of resolving these issues. It is the duty of the prevailing party in the reviewing court to see that the case proceeds. *See Moore v. Armour & Co., Inc.*, 748 S.W.2d 327, 330 (Tex.App.—Amarillo 1988, no writ). We conclude that, while the prevailing party may have a right to act against the trial court if it refuses to act in compliance with the mandate, it does not necessarily give the prevailing party a right of action against the nonprevailing party. The mandate gives the prevailing party a right of action against the nonprevailing party only if the judgment effectively terminates the action; that is, if the reviewing court actually rendered a judgment.

We assume for purposes of this opinion that the supreme court could have rendered judgment naming Mother as the managing conservator. TEX.R.APP.P. 80. However, even if the court could have done so, it did not. The court recognized that conserva-

torship alone was not the only issue to determine in this matter. Because the supreme court's judgment simply directed the trial court to enter a judgment, we conclude that it could not be relied upon as a "court order" for purposes of section 14.10 of the Texas Family Code. Further, since the mandate did not, in and of itself, entitle Mother to possession, the only order on which she could rely was the trial court's judgment entered August 5, 1991.

## WAYS TO AVOID THE GRANTING OF A WRIT OF HABEAS CORPUS

■ A petition for writ of habeas corpus provides virtually an automatic method of recovering possession of a child wrongfully held from the person entitled to possession. There are, however, two exceptions. First, the court may either compel or refuse return of the child if the relator has by consent or acquiescence relinquished possession and control of the child for at least six months immediately preceding the filing of the writ. *See* TEX.FAM.CODE ANN. § 14.10(c) (Vernon Supp.1992). Second, the court may issue any appropriate temporary order if there is a serious, immediate concern for the welfare of the child. *See* TEX.FAM.CODE ANN. § 14.10(d) (Vernon Supp.1992).

### *Voluntary Relinquishment of Possession and Control*

There is no question that Mother did not consent or voluntarily relinquish possession and control of J.J. immediately following the divorce. In fact, she vigorously pursued two appeals and ultimately obtained a reversal of the trial court's original judgment. Within days of obtaining a favorable ruling in the supreme court, Mother filed an application for writ of habeas cor-

---

1. For that matter, the supreme court may have wanted the trial court to determine whether there had been a change in circumstances. A trial court has continuing jurisdiction over a suit affecting the parent-child relationship. TEX. FAM.CODE ANN. § 11.05(a) (Vernon Supp.1992). Even when a mandate is issued by a reviewing court, the trial court is not precluded from issuing orders other than those directed in the mandate, as long as the issuance of the mandate has not terminated the action. *See Moore v. Armour & Co., Inc.*, 748 S.W.2d 327, 329–30 (Tex.App.—Amarillo 1988, no writ) (following remand instructing trial court to reinstate case dismissed for want of prosecution, trial court has no duty to set the case and can again dismiss for want of prosecution if party fails to proceed with reasonable diligence).

pus. Thereafter, the matter was not pursued for a number of months.

We note that section 14.10(c) expressly limits the "consent and acquiescence" exception to the period immediately *preceding* filing of the petition. The Paternal Grandparents request that we interpret this section to include a "consent and acquiescence" exception for periods *following* the filing of the petition. We decline to interpret section 14.10(c) in a fashion contrary to the unambiguous language of the statute. *RepublicBank Dallas, N.A. v. Interkal Inc.*, 691 S.W.2d 605, 607 (Tex.1985).

Mother's petition for writ of habeas corpus, filed on November 26, 1990, could have been treated as a prematurely filed document. *Cf.* TEX.R.CIV.P. 306c (no motion for new trial or request for findings of fact and conclusions of law shall be held ineffective because prematurely filed); TEX.R.APP.P. 41(c) (prematurely filed document shall be deemed filed on the date of, but subsequent to, the time of the signing of the judgment). Under these circumstances, the filing of Mother's petition became effective only on August 5, 1991, the date the trial court judgment was entered. If we consider the period between the effective date of the filing of the writ (August 5, 1991) and the request for a hearing (January 8, 1992), we note that the period is 156 days, or less than six months.

Mother could not voluntarily relinquish possession and control until she actually obtained the superior right of possession, which was August 5, 1991. Therefore, we conclude that the trial court erred in calculating the period from November 1990. Further, Mother requested a hearing on her application for writ of habeas corpus within six months of the time that she obtained a superior right to possession. Therefore, we conclude that the trial court erred in denying the writ on the basis that she had voluntarily relinquished custody for more than six months.

*Serious, Immediate Concern for Child's Welfare*

We note that the trial court specifically found that there was no serious, immediate concern for J.J.'s welfare. Admittedly, the evidence may have shown that it would not be in the child's best interest to change his environment. However, in a habeas corpus proceeding, the issue is whether an order is in place governing the right of possession and whether there is a serious, immediate concern for the child's welfare. *Schoenfeld v. Onion*, 647 S.W.2d 954, 955 (Tex. 1983); *see* 4 BARBARA A. KAZEN, FAMILY LAW: TEXAS PRACTICE AND PROCEDURE § 71.-02[2] (1992). For these reasons, we conclude that the trial court improperly denied Mother's application for writ of habeas corpus.

### CONCLUSION

We conditionally grant the writ and direct Judge Bosworth to vacate his order of February 11, 1992, and to enter an order granting Mother's petition for writ of habeas corpus. We are confident that Judge Bosworth will comply with the order of this Court. If he does not, the writ will issue.