Rehearing En Banc Granted; Opinion of September 19, 2002 Vacated;
Affirmed in Part and Reversed and Remanded in Part; En Ba









Rehearing En Banc Granted;  Opinion of September 19, 2002 Vacated;  Affirmed in Part and Reversed and Remanded in
Part;  En Banc Plurality and Dissenting
Opinions filed July 10, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00453-CV

____________

 

LAWRENCE
MADEKSHO, ROY and MARY MALONE, THOMAS GILLESPIE, and PATRICIA GAREFALOS, Appellants

 

V.

 

ABRAHAM,
WATKINS, NICHOLS & FRIEND, ROBERT E. BALLARD, and the LAW OFFICE of ROBERT
E. BALLARD, P.C., Appellees

 



 

On Appeal from the
239th District Court

Brazoria County, Texas

Trial Court Cause
No. 88G0614-2

 



 

D I S S
E N T I N G   O P I N I O N

Strict adherence, in this
case, to the Supreme Court’s mandate seems both harsh and unjust.  There can be no question that some or all of
the attorneys who labored on behalf of the Malones are now entitled to their
attorney fees.  However, the issue before
us is not whether the trial court correctly apportioned the attorney fees, but
whether the court had any authority to do so in light of the Supreme Court’s
mandate.  Because the trial court lacked
jurisdiction to consider the attorney fee dispute, I respectfully dissent.




An
Illusory Conflict








The majority invokes this
court’s en banc authority for the purpose of quieting an alleged conflict in
our jurisprudence.  The majority cannot
point to any explicit conflict in our jurisprudence, but contends a conflict
nevertheless has arisen silently in our jurisprudence due to the fact we have
previously reviewed post-mandate claims without once indicating any
jurisdictional concerns.  The majority
cites four examplesCBurns
v. Bishop, 48 S.W.3d
459, 467 (Tex. App.CHouston [14th Dist.]
2001, no pet.); Northshore Bank v. Commercial Credit Corp., 668 S.W.2d 787, 789 (Tex. App.CHouston [14th Dist.]
1984, writ ref’d n.r.e.); Velasquez v. Lunsford, No. 14-95-00172-CV (Tex. App.CHouston [14th Dist.] September 26,
1996, no writ) (not designated for publication), 1996 WL 544429, at *2; and First
Bank of LaMarque v. Alexander, No. 14-89-00837-CV, 1990 WL 68486 (Tex. App.CHouston [14th Dist.]
1990, no writ) (not designated for publication).[1]  Of course, not all claims are barred by want
of jurisdiction simply because they are “temporally” post-judgment or
post-mandate actionsConly
those that constitute an impermissible collateral attack upon a final judgment
are prohibited.

For example, excess
supersedeas funds, a judgment award, or a settlement may constitute property
that is subject to turn over, attachment, garnishment or seizure to satisfy a
judgment creditor.  While any action to
seize such property is temporally Apost-judgment,@ in the sense that it
occurs later in time than the judgment or action that spawned the funds, the
court has the same authority to consider the cause as if the judgment creditor
were attempting to execute upon a bank deposit, real property, or any other
non-exempt asset owned by the judgment debtor. 
The court’s action, in such cases, is not an impermissible “post-judgment”
proceeding in the sense that it alters, modifies, or is contrary to the
judgmentCin fact, it is the
validity of the trial court=s
judgment that makes the funds at issue the property of the judgment debtor and,
therefore, subject to garnishment, attachment, etc.

For example, in Burns
v. Bishop,  Burns deposited
supersedeas funds into the registry of the 125th District Court pending appeal
of a judgment obtained against him by a former business associate.  Burns, 48 S.W.3d at 461.  The judgment affirmed on appeal was for less
than the supersedeas funds on deposit with the court.  Id. at 462.  Thus, after the judgment was satisfied,
excess supersedeas funds remained in possession of the 125th District
Court.  Id.  Before those surplus funds could be returned
to Burns, two judgment creditors, who had obtained unrelated judgments in two
other district courts, sought garnishment of the surplus funds.  Id. 
These conflicting claims were consolidated in, and resolved by, the
177th District Court.  Id. at 463.  Accordingly, the dispute resolved by the
177th District Court was a new action, no different than any other where the
plaintiff seeks to attach or garnish non-exempt property or funds of a judgment
debtor.








Likewise, in Northshore
Bank, Frank and Wanda Skatell suffered business reversals and many
judgments were taken against them.  See
Northshore Bank, 668 S.W.2d at 788 (citing Commercial Credit Corp. v.
U.S. Fire Ins., 630 S.W.2d 651, 652 (Tex. App.CHouston [1st Dist.]
1981,  writ ref’d n.r.e.) in which the
facts of the first appeal are set forth). 
The Skatells only significant asset was a claim for theft losses covered
by policies from two insurance companies. 
Commercial Credit, 630 S.W.2d at 651B52.  The Skatells sued the two insurance companies
and obtained a judgment for $82,266.24.  Id.
at 652.  The insurance companies
appealed.  Id.

While the judgment was on
appeal, five of the Skatells’ creditors, apparently sensing the judgment
against the insurance companies likely would be upheld on appeal, filed writs
of garnishment on the insurance companies. 
Id.  The insurance
companies, in turn, filed an interpleader requesting that the court divide the
money among the creditors.  Id.  Thus, while the subsequent proceedings were temporally
“post-judgment” in the sense that they occurred after the Skatells were
awarded a judgment against the insurance companies, the trial court was
invested with jurisdiction by the commencement of a new action, i.e.,
the applications for writs of garnishment and the subsequent interpleader.  In this sense, Northshore Bank is not
an example of improper “post-judgment” action by the trial court.  In fact, nothing the trial court did in
entertaining the interpleader conflicted with its previous judgment; rather, it
was the validity of its previous judgment that suddenly made the insurance
companies a target for writs of garnishment, i.e., they became the
holders of non-exempt property  belonging
to the Skatells.[2]








The majority also
contends our jurisprudence was muddied by certain ambiguities in Harris
County Children’s Protective Services v. Olvera, 971 S.W.2d 172 (Tex. App.CHouston [14th Dist.]
1998, pet. denied), a case relied upon in our panel opinion.  The majority asserts Olvera is
ambiguous as to whether a trial court lacks jurisdiction to act beyond
the scope of an appellate mandate or whether it merely commits error in
doing so.

The holding in Olvera,
however, was not ambiguous.  The issue in
Olvera, as framed by this Court, was “whether this court’s mandate
ordering one of the parties to pay all costs on appeal invested the family
district court with the authority to assess as part of those costs
attorney’s fees on appeal.” Olvera, 971 S.W.2d at 173 (emphasis
added).  In addressing the issue, we
observed “this mandate did not confer any jurisdiction on the trial
court to act in this case . . .”  Id.
at 177 (emphasis added).  While the Court
may have unadvisedly injected the phrase Aabused
its discretion” in commenting on the trial court=s
action, we carefully explained the basis for our holding by stating, “the trial
court had no jurisdiction to make such an award after losing plenary
power, and . . . this court’s mandate . . . did not invest the court with authority
to award attorney=s
fees as an item of ‘costs on appeal.’”  Id.
at 178 (emphasis added).

The majority also avers
that Olvera is ambiguous because we remanded the cause to the trial
court rather than dismissing the appeal as is the usual disposition when there
is a want of jurisdiction.  However, as
we made clear in Olvera, the Texas Supreme Court has authorized an ad
litem attorney to seek attorney fees for an appeal for the first time on
appeal without regard to the ad litem’s ultimate
success on the merits.   Cahill v.
Lyda, 826 S.W.2d 932, 933 (Tex. 1992) (per curiam).  Thus, under the circumstances presented in Olvera,
the ad litem attorney may have been entitled to attorney fees notwithstanding
the want of jurisdiction.  Therefore, we
remanded the case to the trial court to decide the narrow issue of whether
attorney ad litem fees had been incurred on that appeal as required by Cahill.  Olvera, 971 S.W.2d at 178.  Accordingly, the basis for our decision in Olvera
was a want of jurisdiction, not trial court error.

The “conflict” in our jurisprudence
alleged by the majority is illusory.[3]  Moreover, because there is no conflict in our
jurisprudence, there is no legitimate basis for en banc review.  Rule 41.2 of the Texas Rules of Appellate
Procedure sets forth the circumstances under which the court of appeals may
hear a case en banc:

En banc
consideration of a case is not favored and should not be ordered unless
necessary to secure or maintain uniformity of the court=s decisions or
unless extraordinary circumstances require en banc consideration.  

 

Tex.
R. App. 41.2(c).  

The rule is clear.  There are two bases on which to grant en banc
review.  Because there is no conflict in
our jurisprudence nor extraordinary circumstances requiring a full court
review, en banc consideration is not merited here.[4]  








                                                                              




No
Jurisdiction to Exceed the Scope of the Mandate

Texas
courts derive their authority to act from the Constitution and laws of the
State of Texas.  Texas Dept. of
Transp. v. Marquez, 885 S.W.2d 456, 458 (Tex. App.CEl Paso 1994, orig.
proceeding); Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 739 (Tex.
App.CAustin 1994, writ
denied).  Thus, all Texas courts are
courts of limited jurisdiction in the sense that each court has only such power
as the constitution and laws enacted thereunder give such court.  Curry v. Wilson, 853 S.W.2d 40, 51
(Tex. Crim. App. 1993); Martin v. Victoria Indep. Sch. Dist., 972 S.W.2d
815, 817 (Tex. App.CCorpus
Christi 1998, pet. denied).  The test for
jurisdiction is whether the court has the power to enter upon an inquiry and
not whether its conclusions are correct. 
Diocese of Galveston-Houston v. Stone, 892 S.W.2d 169, 174 (Tex.
App.CHouston [14th Dist.]
1994, orig. proceeding).[5]

The subject matter jurisdiction
of a district court is, in one respect, defined by the pleadings.[6]  Because the courts of this state are not
empowered to give advisory opinions,[7] the
judgment of a court must conform to the pleadings and the nature of the case
proved.  Tex. R. Civ. P. 301. 
In other words, the pleadings invoke the trial court=s jurisdiction to render
a judgment, and the part of a judgment, which the pleadings do not support is
void.  Moreno v. Moore, 897 S.W.2d
439, 442 (Tex. App.CCorpus
Christi 1995, no writ).

 

Here, the district court
initially acquired jurisdiction of this cause when Roy and Mary Malone, Thomas
Gillespie, and Patricia Garefalos initiated their suit against Owens-Corning
Fiberglass Corporation by filing their petition with the court.  Although the original pleadings are not
contained in our record, it is clear from the opinions of the First Court of
Appeals and the Texas Supreme Court that no issue regarding attorney fees was
raised by any party.  See
Owens-Corning Fiberglas Corp. v. Malone, 916 S.W.2d 551 (Tex. App.CHouston [1st Dist.]
1996), aff’d, 972 S.W.2d 35 (Tex. 1998). 
Moreover, it likewise appears the trial court’s judgment did not award
attorney fees to any party.[8]  Accordingly, the issue of attorney fees was
never before the trial court.

Thirty days after rendering its final judgment, the district
court lost its plenary jurisdiction over the cause.  Tex. R. Civ. P. 329b;
In re Bokeloh, 21 S.W.3d 784, 787 (Tex. App.CHouston [14th
Dist.] 2000, orig. proceeding).  Once a
court loses jurisdiction to act, it cannot rise like a phoenix from the ashes
and reassert its jurisdiction without statutory authority.  State v. Patrick, 86 S.W.3d 592, 603
(Tex. Crim. App. 2002).  Thus, any
judicial action taken after the court=s jurisdiction had
expired was a nullity.  State ex rel.
Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995) (per curiam).

The trial court=s authority on
remand  

The appellate court=s mandate is “official
notice of the appellate court, directed to the court below, advising it of the
action of the appellate court and directing it to have its judgment duly
recognized, obeyed, and executed.”  Lewelling
.v Bosworth, 840 S.W.2d 640, 642 (Tex. App.CDallas
1992, orig. proceeding).  When the trial
court=s judgment is reversed,
the appellate court may, in its discretion, remand the case for further
proceedings.  Dixie Gas & Fuel Co.
v. Jacobs, 66 S.W.2d 446, 448 (Tex. Civ. App.CBeaumont
1933, writ dism=d).  In such cases, the trial court is invested
with very limited authority, as defined by the parameters of the mandate, to
decide only those issues specified in the appellate court=s mandate.  Olvera, 77 S.W.3d at 343; V-F
Petroleum, Inc. v. A.K. Guthrie Operating Co., 792 S.W.2d 508, 510 (Tex.
App.CAustin 1990, no writ); Texacally
Joint Venture v. King, 719 S.W.2d 652, 653 (Tex. App.CAustin 1986, writ ref=d n.r.e.); Wall v.
East Tex. Teachers Credit Union, 549 S.W.2d 232 (Tex. Civ. App.CTexarkana 1977, writ
ref’d); Seydler v. Keuper,
133 S.W.2d 189, 190 (Tex. Civ. App.CAustin
1939, writ ref’d).[9]   Moreover, the trial court must not exceed
the scope of the mandate.  Texacally
Joint Venture, 719 S.W.2d  at
653.  Thus, when the trial court receives
a case on remand, the extent of its “jurisdiction” is simply to fulfill its
ministerial duty to execute orders that may be necessary to give effect to an
appellate mandate, but no more than is necessary to implement such mandate.[10]









The trial court=s
authority on affirmance

When an appellate court affirms the judgment of the trial court
or renders a judgment the trial court should have rendered, that judgment
becomes the judgment of both courts.  Cook
v. Cameron, 733 S.W.2d 137, 139 (Tex. 1987).  In other words, the judgment of the trial
court stands in the same manner as if there had been no appeal.  Thus, where, as here, the judgment of the
trial court is simply affirmed, there is no reinvestiture of any “jurisdiction”
(limited or otherwise) in the trial court. 
Harris County Children’s Protective Servs. v. Olvera, 77 S.W.3d
336, 342 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied).  See
also Schliemann v. Garcia, 685 S.W.2d 690, 692 (Tex. App.CSan Antonio 1984, orig.
proceeding) (holding trial court=s
orders carrying out mandate of affirmance are ministerial); Los Campeones,
Inc. v. Valley Int’l Props., Inc., 591 S.W.2d 312, 315 (Tex. Civ. App.CCorpus Christi 1979, no
writ) (concluding trial court acted “without jurisdiction” in exercising more
than ministerial duties of enforcing mandate of affirmance).[11]  Accordingly, “the clerk of the trial court
must remove the case from the docket immediately upon return of the mandate
from the appellate court, and the trial court must then give effect to the
judgment by executing it through proper orders and process.”  Los Campeones, Inc., 591 S.W.2d at
315; see also Olvera, 971 S.W.2d at 175 (quoting Myers v. Myers,
515 S.W.2d 334, 335 (Tex. Civ. App.CHouston
[1st Dist.] 1974, writ dism=d))
(AWhen the appellate court
affirms a judgment, upon issuance of its mandate the trial court has the duty
to give effect to the judgment by executing proper orders.”); Allied Fin.
Co. v. Shaw, 373 S.W.2d 100, 107 (Tex. Civ. App.CFort Worth 1963, writ
ref’d n.r.e.) (stating that once judgment was affirmed, trial court “was
without authority to entertain any motion or take any action inconsistent with
the mandate of this Court”).




Void acts or erroneous acts?








Although
acknowledging that a trial court “cannot transgress an appellate mandate,” the
majority proposes that rather than having no jurisdiction, the trial court
merely abused its discretion.  The
Supreme Court, however, has repeatedly held that a judgment is void when the
court rendering judgment had no jurisdiction over the parties or subject
matter, no jurisdiction to render judgment, or no capacity to act as a
court.  See, e.g., State ex rel. Latty,
907 S.W.2d at 485; Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.
1990) (per curiam); Cook, 733 S.W.2d at 140; Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985) (per
curiam).  Here, the only issue in dispute
is jurisdiction, and the trial court lost jurisdiction when its plenary power
expired thirty days after final judgment, i.e., thirty days after
appellant=s
motion for new trial, if any, was overruled by written order or by operation of
law.  See Tex. R. Civ. P.
329b; State ex rel. Latty, 907 S.W.2d at 486 (stating judicial action
taken after court=s
jurisdiction has expired is nullity); In re T.G., 68 S.W.3d 171, 177
(Tex. App.CHouston
[1st Dist.] 2002, pet. denied) (same); Texas Prop. & Cas. Ins. Guar. Ass=n v. De Los Santos,
47 S.W.3d 584, 588 (Tex. App.CCorpus
Christi 2001, no pet.) (same). 
Therefore, any action taken after the trial court lost its plenary power
was void.  State ex rel. Latty,
907 S.W.2d at 486; In re T.G., 68 S.W.3d at 177; De Los Santos,
47 S.W.3d at 588.  Moreover, when the
Supreme Court affirmed the judgment of the trial court, it did not reinvest the
trial court with jurisdiction to address any additional matters.  See Olvera, 77 S.W.3d at 342.

When discussing a trial
court=s duty with respect to an
appellate mandate, Texas courts frame the issue in terms of jurisdiction.[12]  Nevertheless, the majority cites several
decisions to support its conclusion that while a trial court may err
when it acts contrary to or apart from the appellate mandate, its actions are
not void for want of jurisdiction. 
However, none of the cases cited by the majority support this assertion.








For example, the majority
alleges that Texas Workers’ Compensation Ins. Fund v. Mandlbauer, 34
S.W.3d 909 (Tex. 2000) supports its position, but the majority=s reliance is
misplaced.  In Mandlbauer, the
plaintiff was allegedly injured while working for his employer.  When the Texas Workers= Compensation Insurance
Fund denied some of Mandlbauer=s
medical claims, Mandlbauer appealed to the trial court.  The trial court agreed with the Fund, and
Mandlbauer appealed to the court of appeals. 
Finding merit in Mandlbauer’s fourth point of
error, the court of appeals reversed the trial court=s judgment and remanded
the cause for a new trial without addressing Mandlbauer’s
first, second, and third points of error.[13]  The Fund appealed to the Texas Supreme Court
who reversed the court of appeals and remanded the cause for consideration of
Mandlbauer=s
remaining points of error.[14]  The supreme court=s mandate also provided
the ATexas Workers= Compensation Fund shall
recover from Mike Mandlbauer . . . the costs in this Court and in the court of
appeals.”  Mandlbauer, 34 S.W.3d at 911.  On remand, the court of appeals again
reversed the trial court and assessed costs against the Fund as the losing
party.  The Fund again appealed to the
supreme court.  The supreme court
reversed the court of appeals a second time and remanded the cause for
consideration of Mandlbauer=s
remaining points of error.

The majority suggests the
supreme court reversed the court of appeals because the court of appeals ran
afoul of its mandate, and that a reversal (as opposed to a dismissal) indicates
the issue is one of simple error rather than jurisdiction.  However, the supreme court reversed the court
of appeals for its erroneous decision regarding the merits of one of Mandlbauer=s points of error.  The court added, in passing, that the mandate
of the court of appeals was ambiguous as to its assessment of costs because it
did not expressly limit “costs” to the costs of the appeal on remand and,
hence, it could be interpreted as being violative of the supreme court’s
mandate.  Because Mandlbauer lost both
his first and second appeals, the supreme court clarified his liability as to
costs by stating “[o]ur judgment today awards all
costs against Mandlbauer for all appeals.”  Id. at 912 (emphasis added).  However, the basis for the supreme court’s
reversal was that the court of appeals erred in finding the trial court abused
its discretion in refusing to define a term used in the jury charge.  Id. 
Accordingly, the decision has nothing to do with proposition for which
it has been cited by the majority.








The majority also relies
on Cook, 733 S.W.2d 137, but it provides no better support than Mandlbauer.  In Cook, the court considered a divorce
decree that awarded Cook thirty-five percent of Cameron’s gross military
retirement pay.  The Texas Supreme Court
ultimately affirmed the decree.  Id.
at 138B39.  Subsequent to the affirmance, upon Cook=s motion to enforce the
judgment, the trial court ordered that Cameron pay to Cook thirty-five percent
of his gross military pay.  Id. at
139.  Later, the government started
paying Cook directly, but only in an amount equal to thirty-five percent of net
disposable military retirement; Cameron refused to pay the difference between
the judgment and the government’s direct payment.  Id. 
The trial court denied Cook’s motion to enforce the judgment on the
basis that the Uniform Services Former Spouse=s
Protection Act, 10 U.S.C. '
1408 (“USFSPA”) applied to net disposable retirement and the court could not
compel payment of gross retirement; the court of appeals affirmed the trial
court=s order.  Id. 


The Texas Supreme Court
held that because it had previously affirmed the trial court=s decree of thirty-five
percent gross military pay, the trial court=s
judgment became the judgment of the supreme court and the trial court erred in
not enforcing the judgment rendered.  Id.  Recognizing the lower courts= concern that the
original judgment was in conflict with USFSPA, the supreme court pointed out
that it had affirmed the award of gross pay, and that judgment was final.  Id. at 140.  Thus, the lower courts= refusal to enforce the
judgment as written was an improper relitigation of issues already determined
in the prior final judgment.  Id.  The supreme court accordingly Arender[ed] judgment
ordering the trial court to enforce the judgment in Cameron v. Cameron
awarding Cook thirty-five percent of gross retirement benefits beginning June
25, 1981,@ and
remanded the case Ato
the trial court solely to determine the amounts owing to Cook.@  Id. at 141.  Thus, the issue in Cook was the trial
court=s refusal to enforce
the supreme court=s
judgment, not whether the trial court had taken some action beyond the scope of
the mandate.

Observing the
literal terms of a mandate








The majority next argues
that trial courts have never been required to heed the literal language of an
appellate mandate.  Thus, while the Texas
Supreme Court=s
mandate here required Owens-Corning to pay “Roy Malone, et al.,” the majority
cites Myers v. Myers, 515 S.W.2d 334 (Tex. Civ. App.CHouston [1st Dist.] 1974,
writ dism=d
w.o.j.) as support for the position that a mandate directing a party to pay the
opposing party may authorize a trial court to pay someone else, i.e.,
the attorneys.  Myers, however,
never decided this issue.

In Myers, a
divorce case, Mrs. Myers was awarded $20,000 in attorney fees.  Thereafter, Mrs. Myers attempted to execute a
property settlement with her husband that would have discharged his obligation
to pay her attorney fees, thereby, depriving her attorneys of any
compensation.  The trial court did not
approve the property settlement, but rather signed a judgment awarding to Mrs.
Myers, “for the use and benefit of her attorneys, the sum of $20,000 as attorneys’
fees.” Myers, 503 S.W.2d at 404, 404 (Tex. Civ. App.CHouston [14th Dist.]
1973, writ dism=d
w.o.j.) (emphasis added).  The judgment
was appealed by Mr. Myers.  This court
held the putative property settlement was never binding because the trial court
refused to approve it.  Accordingly, the
judgment of the trial court was affirmed, and this court issued a mandate of
affirmance.

When the trial court
obeyed our mandate and awarded Mrs. Myers= attorneys
$20,000 in attorney fees, Mr. Myers complained to our sister court by way of
another appeal and a writ of mandamus. 
The First Court of Civil Appeals dismissed the appeal under the theory
that (1) the trial court had no jurisdiction to do anything other than obey the
Fourteenth Court=s
mandate, i.e., to pay the attorneys as directed in its mandate, and (2)
the court=s
order was not a final judgment for purposes of appeal.  Myers, 515 S.W.2d at 335.  The court of appeals also denied the petition
for mandamus because (1) Mr. Myers did not file a motion for leave to file his
petition, (2) it had no jurisdiction over the matter, and (3) the matter was
moot.  Id. at 335B36.








Thus, the facts in Myers
were unlike the ones presented here.  There, both the trial court=s judgment and our
mandate specifically directed that the attorneys be paid.[15]  In 
fact, Myers is consistent with well-established law that the
trial court must observe and carry out the mandate of the court of appeals, and
its orders carrying out the mandate are ministerial; when interpreting the
mandate, the trial court looks not only to the mandate itself but also to the
appellate court=s
opinion.  Truck Ins. Exchange v.
Robertson, 89 S.W.3d
261, 263 (Tex. App.CFort Worth 2002,
no pet.).  Nothing in Meyers
suggests the trial court need not heed the literal language of the appellate
mandate.

Authority for ancillary acts








The
majority also argues that trial courts routinely do a number of things not
ordinarily addressed in mandates; thus, their jurisdiction is not limited by
the strict terms of an appellate mandate. 
Three of the examples given by the majorityCthe adjudication of
turnover disputes,[16] the
issuance of writs of execution,[17] and
deciding motions for contempt and to enforce[18]Call involve the enforcement
or satisfaction of judgments previously rendered.  This is precisely the function of the trial
court because it is charged with the duty of enforcing the appellate mandate
(if there has been an appeal), and none of these examples are beyond the
parameters of an appellate mandate.[19] 

The majority further
contends the discharge of a judgment lien after bankruptcy is another action a
trial court can take that is not addressed in a mandate.  See Tex.
Prop. Code Ann '
52.022(a) (Vernon 1995) (“The person who has been discharged from his debts,
that person’s receiver or trustee, or any other interested person may apply, on
proof of the discharge, to the court in which the judgment was rendered for an
order discharging and canceling the judgment and judgment lien.”).  A judgment and judgment lien may be
discharged and canceled if the person against whom the judgment was rendered is
discharged from his debts under federal bankruptcy law.  Tex.
Prop. Code Ann. '
52.021 (Vernon 1995).  However, the
discharge of a judgment after bankruptcy is a specific situation provided by
statute, not remotely relevant to the issue of whether the trial court has
authority to act beyond the parameters of an appellate mandate.








 
          Finally, the majority
contends the trial court has the authority to recalculate prejudgment
interest.  See D.S.A. Inc. v.
Hillsboro Indep. Sch. Dist., 999 S.W.2d 887, 894 (Tex. App.CWaco 1999, pet.
denied).  In that case, the Texas Supreme
Court held the evidence was legally sufficient to support the breach of
contract claim and remanded the case to the trial court to recalculate
damages on a cause of action for breach of contract.  Id. at 890.  On remand, the trial court calculated the
damages differently than it had in the original judgment.  The court of appeals specifically held A[t]he trial court has a >duty to decide the issue
[of prejudgment interest] and to render judgment with respect thereon=@ and,
thus the trial court had the authority to recalculate the prejudgment interest
on the judgment.  Id. at 894
(quoting Comet Aluminum Co. v Dibrell, 450 S.W.2d 56, 58B59 (Tex. 1970) (orig.
proceeding)).  In other words, the trial
court did nothing more than enforce the appellate mandate.




Trial courts want
of authority to apportion attorney fees  

Here, the issue of attorney fees was never
before the trial court.  Accordingly,
when the cause was reviewed by the Texas Supreme Court, no issue regarding attorney
fees was before the Supreme Court. 
Because no issue regarding attorney fees was before the Supreme Court,
its mandate resolves no issue regarding attorney fees.  Consistent with the absence of any attorney
fee issues, the mandate merely says:

Roy Malone, et al.
shall recover from Owens-Corning Fiberglas Corporation and surety AEtna
Casualty & Surety Company, who shall pay the costs in this Court and in the
court of appeals.








The trial court=s plenary jurisdiction
expired more than four years prior to its consideration and putative resolution
of the attorney fee dispute.  When the
Supreme Court issued its mandate, it did not remand the cause of action to the
trial court; it did not reinvest the trial court with authority to decide any new
issue or consider any unresolved points of contention.  In fact, the trial court had no more
authority to entertain an attorney fee dispute in this case after appeal than
it would have had if there had been no appeal. 
Moreover, the trial court=s
determination of attorney fees could not conceivably be considered a mere
ministerial duty necessary to the implementation of the mandate.  Therefore, the trial court lacked
jurisdiction to decide the attorney fee dispute and had no authority to award
fees to the various attorneys.  

                                                              Interpleader

Despite the trial court=s lack of jurisdiction to
try the attorney fee claims in the face of an unambiguous mandate directing
Owens-Corning to pay the Malones, the majority holds the trial court was authorized
by Owens-Corning=s
post-judgment interpleader to apportion the award among the Malones and their
various attorneys.  While acknowledging
that such relief is foreclosed by our holding in Wong v. Smith, 537
S.W.2d 468 (Tex. Civ. App.CHouston
[14th Dist.] 1976, orig. proceeding), the majority circumvents that obstacle by
simply overruling Wong, citing several equitable arguments such as (1)
Owens-Corning could not have filed its interpleader any earlier than it did
because interpleader requires an unconditional tender, (2) the trial court
could not release the funds in its registry until after the mandate issued, and
thus there is no point in requiring an interpleader to be filed prior to the
mandate, and (3) because the law firms might have been able to protect
themselves by other remedies, it is foolish to deny the same relief sought by
way of an interpleader.








The rule that
interpleader is inappropriate after final judgment is not peculiar to
Texas;  it is the general rule throughout
the country.  Wassman v. Travelers
Cas. & Sur. Co., 797 So.2d 626, 633 (Fla. Dist. Ct. App. 2001) (holding
law, generally throughout country, is Athat
in order for a plaintiff to be entitled to relief by interpleader, he must
apply for that relief before a judgment at law has been rendered in favor of
any of the claimants to the common fund@);  accord Montgomery v. Travelers Indem. Co.,
192 So.2d 779, 781 (Fla. Dist. Ct. App. 1966); Brown v. Wilson, 56 Ga.
534, 536 (1876) (holding that “[w]hen a bill of interpleader is the proper
remedy it should be brought before one of the claimants of the fund has
obtained judgment therefor”); Italiana v. Papa, 204 Ill. App. 343, 345
(1917) (holding that the stakeholder “having chosen to defend the suit at law,
the unreversed judgment in that suit obtained is not subject to attack in a
proceeding in equity”); Phillips v. Taylor, 129 A. 18, 20 (Md. 1925)
(holding that A[i]f
a stakeholder defends a suit by one claimant and allows it to proceed so far as
a judgment against him without filing a bill of interpleader, it then becomes
too late for him to do so”); Eclipse Pioneer Div. of Bendix Aviation Corp.
v. Minter, 35 N.J. Super. 430, 435, 114 A.2d 451, 453 (1955) (holding that Awhere there are two
claims exposing a debtor to double liability, he cannotConce one of the claims is
reduced to judgment against himCsecure
redress by way of interpleader unless he can be relieved of the judgment@).

There are several reasons
for this rule.  First, once a judgment
has been taken, the plaintiff is no longer a disinterested stakeholder, but a
judgment debtor.  Wassman, 797
So.2d at 632.  Thus, here, the Malones
were no longer competing claimants to a fund, but judgment creditors, and the
trial court had no power to restrict their collection of the judgment to an
interpleader contest.  Id.

Second, the stakeholder
must use reasonable diligence to bring the contending claimants into court, and
laches bars him from delaying his application until after an unsuccessful trial
against one of them.  Gonia v. O=Brion,
223 Mass. 177, 178, 111 N.E. 787, 788 (1916).

Third, the remedy by interpleader is
afforded to protect the stakeholder from the annoyance and hazard of two or
more actions.  “[T]o permit an
unsuccessful defendant to compel the successful plaintiffs to interplead, is to
increase instead of to diminish the number of suits; to put upon the shoulders
of others the burden which he asks may be taken from his own.”  McKinney v. Kuhn, 59 Miss. 186, 188
(1881); see also American Surety Co. v. Brim, 1975 La. 959, 967, 144 So.
727, 730 (1932).  In other words:








It is the special
purpose of a bill of interpleader not only to protect the stakeholder against
several suits by two or more claimants, but likewise to save all the parties
against the cost and annoyance of several independent suits. Something
is due to the claimants in such cases as well as the stakeholder. The
former should not be put to the trouble of litigating their claims twice any
more than the latter should be twice rendered liable for the one amount in his
hands. A bill of interpleader, seasonably filed, is sufficient to protect all
interests alike, and to determine to whom in justice the money should be paid;
and if the holder of the money does not choose to avail himself of this
safeguard at the proper time, and, on the contrary, puts the parties to the
trouble and expense of forcing him to judgment, he has only himself to blame
for his predicament. Judgments rendered against him in such case are not unjust
judgments for which he is entitled to the intervention of equity, but
adjudications provoked by himself with full knowledge of the risks which he
incurs. 

 

Tralles v. Metropolitan Club,
18 App. D.C. 588, 595B96
(1901) (emphasis added).

Fourth, and most
importantly, after the judgment creditor has obtained a final judgment, the
filing of an interpleader by the judgment debtor is an impermissible collateral
attack upon the judgment.  Wassman,
797 So.2d at 633 n.1 (holding that an Ainterpleader
action constitutes a collateral attack on the judgment”); Eclipse, 114
A.2d at 453 (holding the inconsistency of two claims does not of itself enable
the stakeholder to impugn the verity of the judgment); American Sur. Co. of
New York v. Grays Harbor County, 187 Wash. 164, 166, 60 P.2d 10, 12 (1936)
(holding the filing of an interpleader after final judgment is a collateral
attack upon the judgment).








The majority nevertheless
contends that by its very nature, the trial court had quasi in rem jurisdiction
to consider a writ of interpleader because once the funds at issue had been
tendered into the registry of the court, it could not “simply toss the money
back out the clerk’s window.”  While it
would have been imprudent to toss the money out the clerk=s window, it could, of
course, have been returned to the interpleader. 
In fact, this is the only appropriate course of action available to the
trial court where, as here, it lacked jurisdiction to even consider altering,
modifying, or amending the judgment (which was the effect of entertaining a
post-judgment interpleader).

The majority’s equitable
arguments likewise fail because Owens-Corning had no need of equity, and thus
no need of an interpleader.  The purpose
of the interpleader procedure is to relieve an innocent stakeholder of the
vexation and expense of multiple litigation and the risk of multiple
liability.  Dallas Bank & Trust v.
Commonwealth Dev. Corp., 686 S.W.2d 226, 230 (Tex. App.CDallas 1984, writ ref’d
n.r.e.).  Interpleader is appropriate,
therefore, only when the stakeholder is or may be exposed to multiple
liability.  Id.  

Here, while Owens-Corning
may have been aware of the dispute among the Malones’ attorneys, its sole
obligation was to pay the Malones.  As a
defendant in a tort action, Owens-Corning had no obligation to reimburse the
Malones for their attorney fees.[20]  The Malones had entered into a contingency
fee agreement with Madeksho for legal services with respect to their asbestos
lawsuit against Owens-Corning, but had entered into no such contract with
Ballard.  Instead, Ballard’s claim, as
alleged by Ballard and as tried by the trial court, was against Madeksho for
breach of contract for attorney fees. 
Therefore, the dispute was between Madeksho and Ballard, and did not
involve the MalonesCthe
parties to whom Owens-Corning was directed by the supreme court to pay the
judgment.  Accordingly, there was no
possibility that Owens-Corning might be exposed to multiple liability.  








The majority also
contends that Wong prevented Ballard from asserting his breach of
contract action against Madeksho in a separate cause of action.  I disagree. 
First, following prior established authority, Wong held the trial
court could not entertain the interpleader action because the interpleading
party knew of the rival claims to the funds in the judgment prior to filing the
interpleader.  An interpleader action was
not necessary here because Owens-Corning was not liable for the attorney
fees.  Second, Ballard’s claim alleged
that Madeksho had breached their fee-sharing agreement in the Malones’ asbestos
case against Owens-Corning;  Ballard had
no contract with the Malones.  Thus,
Ballard could have filed a separate lawsuit against Madeksho without
interfering with the Malones=
recovery of their judgment. 

The majority further
asserts a separate action would deprive Ballard and the law firm of their
property rights because they were not mere creditors, but held a property
interest in the interim.  The majority
suggests that if we ignore the law firm=s
equitable interest and order the entire judgment paid to the clients, Ballard
and the law firm will be deprived of their fees.  The problem with the majority’s position is
Ballard=s fee arrangement was
with Madeksho, not the Malones.  Thus,
Ballard=s remedy was to look to
Madeksho for payment for his share of the work performed in the Malones= asbestos case.  

Finally, the majority
warns that if Owens-Corning is not permitted to maintain an interpleader
action, it may find itself in the position of having to pay not only the
Malones the full amount of the judgment, but also the fees owed to Ballard and
the law firm because a defendant who has knowledge of “a contingency-fee claim
by an attorney and yet pays the full judgment to the client” is obligated to
pay the fee portion twiceCciting
Honeycutt v. Billingsley, 992 S.W.2d 570, 584 (Tex. App.CHouston [1st Dist.] 1999,
pet denied). Honeycutt, however, is clearly distinguishable.

In that case, the
Honeycutts entered into a contingency fee agreement with Billingsley for legal
services for injuries they sustained in an automobile accident.  Id. at 573.  Billingsley referred the case to another
attorney and withdrew as attorney of record. 
Id. at 574B75.  The defendant settled with the Honeycutts,
paying the Honeycutts the full amount of the judgment.  Id. at 583.  The Honeycutts, however, did not pay
Billingsley his fee under the contingency fee agreement.  Id. 
Billingsley sought to hold the Honeycutts and the defendant jointly and
severally liable for his fee.  Id.  








The court of appeals held
that if a client, after having assigned an interest in the case to his
attorney, attempts to settle the entire case without the attorney=s agreement, the attorney
is not bound by the settlement.  Id.
at 584.  “If the defendant in the
underlying suit has notice of the attorney=s
interest, the defendant is liable to the attorney, even if he has already paid
the client.”  Id. (citing Galveston
H. & S.A. Ry. Co. v. Ginther, 96 Tex. 295, 72 S.W.166, 167
(1903)).  The court thus reasoned that
the defendant=s
position is the same as any other person paying a debt to the original
creditor, instead of an assignee, whose rights were known.  Id.

Thus, in Honeycutt,
the defendant paid the Honeycutts pursuant to a settlement, not a judgment,
and the defendant was aware of the attorney=s
interest in the settlement.  Id.[21]  That is not the situation here.  Therefore, Honeycutt is inapplicable,
and is limited to facts where the defendant has settled with the
plaintiff, but pays the full amount of the judgment to the plaintiff knowing
that the plaintiff=s
attorney has a claim to a portion of the amount paid.  Honeycutt, 992 S.W.2d at 584.  Here, judgment was rendered after a full jury
trial and appeals to the First Court of Appeals and the Texas Supreme Court
with the issuance of a mandate ordering Owens-Corning to pay the Malones; there
was no settlement between Owens-Corning and the Malones that operated to deprive
Ballard and the law firm of their fees.




Conclusion








“It is better that the
law should be certain than that every judge should speculate upon improvements
in it.”[22]  While the majority reaches a fair result, I
fear it has been achieved by violence to the jurisprudence of both this Court
and others.  If not rectified by the
Texas Supreme Court, there will be no finality in the law.  Our appellate mandates will not mark the end
of litigation.  Rather, there will be new
issues raised in the trial court after our mandate has issued, and new appeals
arising from the trial court=s
post-mandate proceedings.

For these reasons, I
respectfully dissent.  

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and En Banc Plurality and Dissenting Opinions filed July 10,
2003.  (Justices Fowler, Seymore, and
Guzman join the Plurality.  Justice
Edelman concurs in the result only. 
Justice Hudson dissenting with Justices Yates, Anderson, and Frost
joining the dissent.)

En
Banc Panel.











[1]  The Velasquez
and Alexander cases cited above are unpublished decisions that have no
precedential value and need not be distinguished.  Tex.
R. App. P. 47.7.  However, a
cursory review of these cases reveals that they do not stand for the
proposition for which they have been cited.

For example, the trial court in Velasquez
approved a settlement agreement that set forth the amount of attorney fees for
each of the plaintiff=s lawyers.  Velasquez,
1996 WL 544429, at *1.  Before the
judgment was final, a dispute arose among the attorneys, and the trial court
severed the matter of attorney fees which it ultimately resolved.  Id. at *2.  Clearly, the trial court took no improper Apost-judgment@ action;
it did not violate its judgment; and it did not violate the mandate of an
appellate court.

In Alexander, the First Bank of
LaMarque initiated a garnishment action to satisfy its judgment against
Alexander in the amount of $21,077.  Alexander,
1990 WL 68486, at *1.  The writ of
garnishment was served against Malone Trucking Company which owed Alexander
$6,600 under a Galveston court judgment for attorney fees in a prior litigation
between Malone Trucking and Alexander.  Id.  Alexander=s
attorney intervened, and the trial court ultimately awarded the $6,600 to
Alexander=s attorney.  Id.
 Thus, the trial court did not act
contrary to its prior judgment or an appellate mandate;  rather, it merely considered whether a
third-party judgment creditor was entitled to seize non-exempt assets of
Alexander, i.e., his judgment award against Malone.





[2]  The
distinction between Northshore Bank and the case sub judice is
further illustrated by the fact that there the dispute was manifested by the formal
filing of a new action, i.e., competing petitions for writs of
garnishment; here, the dispute was attested only by informal quarreling
among the Malones’ attorneys.  There, a
claim was made against the judgment award by third-party judgment creditors;
here, a claim was made on the basis of an alleged oral agreement that had not
yet been confirmed by a judgment. 
There, the judgment debtor filed an interpleader in response to new
actions filed by the third-party judgment creditors; here, the judgment
debtor filed an interpleader in the same case to resolve fee disputes
among plaintiffs’ counsel.   There, the
trial court’s actions did not violate an appellate mandate because the
plaintiffs’ judgment award was simply garnished like any other non-exempt funds
belonging to a judgment debtor; here, the trial court’s action violated an
appellate mandate because the plaintiffs’ judgment award was divided and
distributed contrary to the express terms of the mandate.





[3]  See also
Financial Ctr., Inc. v. State of Tex., No. 14-01-00553-CV (Tex. App.CHouston [14th Dist.] September 26, 2002, no pet.) (not
designated for publication), 2002 WL 31126788 (affirming trial court=s dismissal of claims for lack of jurisdiction
when enforcing appellate court mandate); Contemporary Health Mgmt., Inc. v.
Palacios, 832 S.W.2d 743, 747 (Tex. App.CHouston
[14th Dist.] 1992, no writ) (agreeing with appellant that trial court abused
its discretion in awarding guardian ad litem fees in addition to previous award
and, thus, holding that because case had been remanded for trial court to state
good cause for taxing costs, “trial court was without jurisdiction to
make other modifications to the judgment”) (emphasis added).





[4]  The fact that
a majority of the en banc court may disagree with a panel is not the standard
for en banc review.  Thompson v. State,
89 S.W.3d 843, 856 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d) (Jennings, J., concurring in denial of rehearing en
banc); Schindler Elevator Corp. v. Anderson, 78 S.W.3d 392, 424 (Tex.
App.CHouston [14th Dist.] 2002), jdgm=t vacated without reference to the merits due to
settlement by the parties, No.
02-0426, (Tex. May 22, 2003) (not designated for publication), 2003 Tex. LEXIS
68. (Frost, J., concurring in denial of rehearing en banc); see also Olander
v. State Farm Mut. Auto. Ins. Co., 317 F.3d 807, 813 (8th Cir. 2003) (J.,
Lay, dissenting to rehearing en banc) (“Allowing this case to proceed en banc
invites every lawyer in every routine appellate case in this circuit to
petition for rehearing en banc without a thought as to the significance of the
issue involved or the limited resources of the court.  Albeit, the court does not have to grant any
petition, but the court must read every petition.”).  Moreover, “[t]he function of en banc hearings
is not to review alleged errors for the benefit of losing litigants.”  United States v. Rosciano, 499 F.2d
173, 174 (7th Cir. 1974) (explaining rehearing en banc was improvidently
granted and withdrawing order).





[5]  Jurisdiction
is the power to hear and determine issues of law and fact involved in a case,
and to render a judgment thereon.  In
re N.J.A., 997 S.W.2d 554, 559 (Tex. 1999). 
The jurisdiction of a district court consists of exclusive, appellate,
and original jurisdiction of all actions, proceedings, and remedies, except in
cases where exclusive, appellate, or original jurisdiction may be conferred by
the Constitution or other law on some other court, tribunal, or administrative
body.  Tex.
Const. art. V, ' 8; Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71,
75 (Tex. 2000).  





[6]  It is a fundamental
rule that in determining the jurisdiction of the trial court, the allegations
of the petition made in good faith are determinative of the cause of
action.  Brannon v. Pacific Employers
Ins. Co., 148 Tex. 289, 224 S.W.2d 466, 469 (1949).





[7]  Patterson
v. Planned Parenthood of Houston & S.E. Tex., Inc., 971 S.W.2d 439, 443
(Tex. 1998); Waite v. Waite, 64 S.W.3d 217, 223 (Tex. App.CHouston [14th Dist.] 2001,  pet. denied). 





[8]  Attorney fees
are not recoverable on tort claims.  Academy
Corp. v. Interior Buildout & Turnkey Constr., Inc., 21 S.W.3d 732, 743
(Tex. App.CHouston [14th Dist.] 2000, no pet.); Metropolitan
Life Ins. Co. v. Haney, 987 S.W.2d 236, 243B44 (Tex.
App.CHouston [14th Dist.] 1999, pet. denied).  Thus, it would have been inappropriate to
award attorney fees against Owens-Corning.





[9]  See also
Dallas/Fort Worth Int=l Airport Bd. v. City of Irving, 868 S.W.2d 750, 751 (Tex. 1993) (per curiam) (AOnce this court has remanded a cause to a lower court,
it has exclusive jurisdiction over the remanded proceedings, and will permit no
interference from any court.@); Kahn v. Seely, 37 S.W.3d 86, 88 (Tex. App.CSan Antonio 2000, no pet.) (holding trial court=s only authority upon remand was to delete from
judgment any amount that was post-dissolution compensation and re-terminate
partnership; A[n]owhere was authority granted for trial court to
undertake a new accounting . . .@); Austin
Transp. Study Policy Advisory Comm. v. Sierra Club, 843 S.W.2d 683, 690
(Tex. App.CAustin 1992, writ denied) (stating that in limited
remand, trial court has reasonable amount of discretion to comply with
mandate); Lewelling, 840 S.W.2d at 643 (finding it was necessary for
trial court to rule on ancillary matters such as support and visitation after
remand from supreme court with instructions to name mother as managing
conservator); Wingfield v. Bryant, 614 S.W.2d 643, 645 (Tex. Civ. App.CAustin 1981, writ ref=d
n.r.e.) (holding trial court only had jurisdiction on remand to enter nunc pro
tunc judgment and had no jurisdiction to change judgment in any other
manner).  





[10]  See, e.g.,
Dallas County v. Sweitzer, 971 S.W.2d 629, 630 (Tex. App.CDallas 1998, no pet.) (stating trial court=s orders carrying out mandate are ministerial); Austin
Transp. Study Policy Advisory Comm., 843 S.W.2d at 690 (stating that in
limited remand, trial court has reasonable amount of discretion to comply with
mandate); Martin v. Credit Protection Ass’n, Inc.,
824 S.W.2d 254, 256B57 (Tex. App.CDallas
1992, writ dism=d w.o.j.) (finding party was seeking affirmative
relief additional to that given in mandate and was not necessary to its
implementation); Bayoud v. Bayoud, 797 S.W.2d 304, 310 (Tex. App.CDallas 1990, writ denied) (holding trial court was
authorized to order liquidation and distribution of remaining assets because
trial court must conduct necessary proceedings to discharge receiver); Texacally
Joint Venture, 719 S.W.2d at 653B54
(holding trial court did not abuse discretion in allowing party one week to
complete transaction in order to fulfill terms of mandate instructing trial
court to “enter judgment ordering specific performance of the contract made the
basis of this suit”).  





[11]  This is also
the rule in other jurisdictions.  See,
e.g., Werborn v. Pinney, 76 Ala. 291 (1884) (holding that upon supreme
court’s affirmance of decree, lower court could not issue any order altering or
modifying terms of supreme court=s
judgment); Spector v. McFate, 95 Ariz. 88, 89, 387 P.2d 234 (1963)
(holding superior court was “absolutely without jurisdiction to render a
judgment differing in one jot or tittle from that which [supreme court]
directed it to render”); Griset v. Fair Political Practices Comm=n, 25 Cal.
4th 688, 701, 107 Cal. Rptr. 2d 149, 159, 23 P.3d 43, 51 (2001) (holding
unqualified affirmance ordinarily sustains judgment and ends litigation;
therefore, trial court did not have jurisdiction to reopen case once supreme
court=s decision became final); Tidwell Homes, Inc. v.
Sharif, 169 Ga. App. 270B71, 312 S.E.2d 616, 617 (Ga. App. 1983), aff=d, 252 Ga.
205, 312 S.E.2d 114 (1984) (holding that when final judgment of trial court is
affirmed by appellate court, and not remanded to trial court for further
proceedings, controversy is at an end; thus, rights of the parties are
conclusively adjudicated and further proceedings in trial court are precluded,
and judgment of the lower court is in full force and effect, precisely the same
as if no appeal had been taken); Waterhouse v. Iowa Dist. Ct. for Linn
County, 593 N.W.2d 141, 142 (Iowa 1999) (in absence of remand directing
further proceedings in trial court, jurisdiction of district court terminates
both as to parties and subject matter when district court judgment has been
affirmed); Collins v. Acree, 614 So.2d 391, 392 (Miss. 1993) (stating
that upon issuance of appellate mandate affirming trial court judgment, trial
court simply proceeds to enforcement of final judgment and execution of mandate
is purely ministerial); Rosenblum v. Gibbons, 706 S.W.2d 49, 50B51 (Mo. App. 1986) (holding that after affirmance on
appeal and issuance of appellate mandate, trial court was without jurisdiction
to do anything but that which was necessary to carry out mandate); Severance
v. Ford Motor Co., 105 N.C. App. 98, 101, 411 S.E.2d 618, 620 (1992)
(stating any trial court action that varies, disregards the appellate court
decree, or attempts to postpone its enforcement is beyond trial court’s
authority and its authority to that effect is a nullity); Rudolph v. Herman,
4 S.D. 203, 56 N.W. 122 (1893) (district court no longer had jurisdiction of
case after affirmance of dismissal of appeal of case).  





[12]  Dallas/Fort
Worth Int=l Airport Bd.,
868 S.W.2d at 751; Olvera, 77 S.W.3d at 343; Kahn, 37 S.W.3d at
88; Sweitzer, 971 S.W.2d at 631; Olvera, 971 S.W.2d at 178; Contemporary
Health Mgmt., Inc., 832 S.W.2d at 747; Bayoud, 797 S.W.2d at 310; V-F
Petroleum, Inc., 792 S.W.2d at 510; Texacally Joint Venture, 719
S.W.2d at 653; Schliemann, 685 S.W.2d at 693; Wingfield, 614
S.W.2d at 645; Los Campeones, Inc., 591 S.W.2d at 315; Allied Fin.
Co., 373 S.W.2d at 107.  





[13]  Mandlbauer
v. Texas Work. Comp. Ins. Fund, 990 S.W.2d 290, 291 (Tex. App.CBeaumont 1998), rev=d, 988
S.W.2d 751 (Tex. 1999).





[14]  Texas Work.
Comp. Ins. Fund v. Mandlbauer, 988 S.W.2d 751, 753 (Tex. 1999).





[15]  The majority
cites Ohio Medical Products, Inc. v. Suber, 758 S.W.2d 870, 873 (Tex.
App.CHouston [14th Dist.] 1988, writ denied) as additional
support that a party other than the one named in the mandate can be paid.  In Suber, the plaintiffs sued the
anesthesiologist and the hospital for negligence and medical malpractice, while
suing the manufacturers, sellers, and servicers of the anesthesia gas machine
for defective product and negligent design. 
Id. at 871.  The case went
to the jury with Ohmeda as the sole defendant. 
Id. at 872.  On appeal,
Ohmeda claimed the trial court erred in overruling its motion to reform the
judgment to provide for the statutory hospital lien.  Id. at 873.  The court stated the hospital, not Ohmeda,
could claim the statutory lien against a judgment in favor of the
plaintiffs.  Id. (citing Tex. Prop. Code Ann. ' 55.002, which provides for a hospital lien on a cause
of action or claim of an individual who receives hospital services for injuries
caused by accident attributable to the negligence of another person).  To secure a lien, a hospital must file
written notice of the lien with the clerk of the county in which the injury
occurred and such notice must be on file before money is paid to the entitled
person.  Tex. Prop. Code Ann. ' 55.005.  No statutory lien attaching to the judgment
in favor of the Malones was at issue in this case.  





[16]   See Tex Civ. Prac. & Rem. Code Ann ' 31.002 (Vernon Supp. 2003) (providing that judgment
creditor is entitled to aid from court of appropriate jurisdiction through
injunction or other means in order to reach property to obtain satisfaction
of judgment); Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 224
(Tex. 1991) (explaining that turnover statute is Athe
procedural device by which judgment creditors may reach assets of a debtor that
are otherwise difficult to attach or levy on by ordinary legal process.@); Cross, Kieschnick & Co. v. Johnson, 892
S.W.2d 435, 438 (Tex. App.CSan Antonio 1994, no writ) (stating that turnover
statute does not provide for determination of substantive rights).  





[17]  See Tex. Civ. Prac. & Rem. Code Ann. ' 34.001B.067
(Vernon 1997) (providing procedures for execution of judgments).  





[18]  See Cook,
733 S.W.2d at 139 (stating that party returned to trial court that rendered divorce
decree, filing motion for contempt and motion to enforce judgment).  





[19]  The majority
observes the trial court has the authority to create, modify, or terminate
trusts set up for minors or the incapacitated. 
See Tex. Prop. Code Ann.
' 142.001B.007
(Vernon 1995 & Supp. 2003) (providing for management of property recovered
in suit by next friend).  This relates,
however, to managing money or property awarded under a judgment for the
protection of minors or incapacitated persons. 






[20]  Academy
Corp., 21 S.W.3d at 743; Haney, 987 S.W.2d at 243B44.  





[21]  Galveston
H. & S.A. Railway Company, cited by the court in Honeycutt,
similarly involved facts where the plaintiff had assigned an interest in his
claim against the defendant to his attorneys. 
72 S.W. at 167.  The attorneys’
right to be paid in the settlement was not defeated by the defendant=s payment to the plaintiff when the defendant knew of
the attorneys’ right to payment.  Id.  





[22]  McKenna v.
Austin, 134 F.2d 659, 673 (D.C. Cir. 1943) (Stephens, J., dissenting)
(quoting Lord Eldon).