The **SUPERIOR OIL COMPANY** et al.,
Appellants,

v.

**RAILROAD COMMISSION OF TEXAS**
et al., Appellees.

No. 6399.

Court of Civil Appeals of Texas,
El Paso.

Jan. 22, 1975.

Rehearing Denied Feb. 26, 1975.

Patman & Patman, Philip F. Patman, McGinnis, Lochridge & Kilgore, Robert C. McGinnis, John W. Stayton, Jr., Austin, Dillard W. Baker, Seldon B. Graham, Jr., and Walter B. Morgan, Houston, for appellants.

Dee J. Kelly, Ft. Worth, John L. Hill, Atty. Gen., Linward Shivers, Asst. Atty. Gen., Austin, L. Holt Magee, Monahans, for appellees.

## OPINION

PRESLAR, Chief Justice.

This case is an attempted appeal from an order of the Railroad Commission to a District Court. It involves the construction of the Mineral Interest Pooling Act, Article 6008c, Vernon's Tex.Rev.Civ.Stat. Ann., commonly known as the Compulsory Pooling Act. The Trial Court dismissed the appeals to it of the Appellant, The Superior Oil Company, and the Appellant, Exxon Corporation. We affirm, holding that The Superior Oil Company had no right to appeal the Commission order because it was not an interest owner within the meaning of the Act, and that Exxon Corporation's attempted appeal came too late under the provisions of the Act.

This case arises from an appeal to the District Court of an order of the Railroad Commission creating a forced pooled unit for the production of oil and gas in the Block 16 (Devonian) Field, Ward County, Texas. The order was issued on the application of Kimball Production Company to pool its interest with that of Exxon Corporation, Mobile Oil Corporation, and one Jack O. McCall, all under the authority of the Mineral Interest Pooling Act. Appellant Superior owns no interest in the unit, rather, it is an offset operator on an abutting tract. Superior filed this suit against the Appellee Railroad Commission, and Kimball intervened on the side of the Commission, and Exxon intervened on the side of Superior. Appellees filed pleas to the jurisdiction and joint motions to dismiss the suit filed by Superior and to strike the intervention of Exxon, and the District Court sustained the pleas and granted both motions from which this appeal resulted.

■■ We turn first to Superior's point of error by which it contends that it is a "person or party at interest aggrieved" within the meaning of Section 2(g) of Article 6008c and therefore has standing to appeal to the Court of the county where the land was located. We hold that Supe-

rior is not such a person, and considering the entire Act we conclude the intention of the Legislature to be that the only persons entitled to claim the privileges of the Act are the interest owners within the existing or proposed proration unit. Superior admittedly is not such an interest owner. The latest expression of our Supreme Court on statutory construction is found in Calvert v. Texas Pipe Line Company, 517 S.W.2d 777 (1974), wherein the Court said:

"The fundamental and dominant rule controlling the construction of a statute is to ascertain if possible the intention of the Legislature expressed therein. Sec. 6, Article 10, Vernon's Ann. Revised Civil Statutes. In Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex.1965), at 842 this Court said:

" 'Article 10, Vernon's Annotated Civil Statutes, provides general rules for construing all civil statutory enactments. The article provides that the provisions of statutes shall be liberally construed with a view to effect their objects. The courts necessarily look diligently for the intention of the Legislature as the intention of the Legislature is the dominant consideration in construing a statute. See State v. Dyer, 145 Tex. 586, 200 S. W.2d 813 (1947); McInery v. City of Galveston, 58 Tex. 334 (1883); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951).'

"An equally fundamental rule of statutory construction is that the intention of the Legislature must be ascertained from the entire Act, and not from isolated portions thereof. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S. W.2d 273 (1951). * * *"

■ Article 6008c is a 1965 Act of the Legislature conferring authority on the Railroad Commission to compel the pooling of separately owned mineral interests in a proration unit for an oil or gas well. One of its primary objectives was to solve the dilemma caused by the application of spac-

ing and density requirements to an oil or gas field which contained many small or irregular shaped tracts. For example, when spacing patterns were set by the Railroad Commission in a field, the owner of a tract smaller than such drilling unit either would be denied a permit altogether or would be granted such a low allowable that it was not profitable to drill. His oil, then, would be drained away and produced by others. Alternatively, if the small tract owner were granted an allowable which permitted profitable development of his tract he would drain away his neighbor's oil and gas in that he was allowed to produce more oil or gas than was in place under his tract. These problems the Act was designed to cure by providing a method by which the owners of small tracts could be forced to pool their interests into a proration unit of the size provided for the field. The owners may pool by agreement, but in the absence of their being able to agree or unwilling to have their interests pooled, one of their number can make application to the Railroad Commission under the Act and force the others to pool with him. It is readily seen that the Act is in derogation of the right of one to do with his own property as he so desires, and the Legislature has spelled out in detail the procedure to be followed and the conditions which must be found to exist before the Commission is authorized to require such pooling. We will not attempt to specify those details but suffice it for our purposes here to say that the Act in its entirety is confined to the subject of forcing property owners to combine their property with that of others and specifying who, what property, and how and when and under what circumstances such owner's interest may be so combined. To make its determination of all the many matters which must be found to exist before forced pooling can be ordered the Commission must hold a public hearing and enter its order. As to such order, the Act provides by Section 2(g):

"Any person or party at interest aggrieved by an order of the Commission effecting pooling under this Act may appeal such order within 30 days to the District Court of the county in which 'the land or any part thereof covered by such order is located, and not elsewhere, notwithstanding the provisions of Section 8 of Article 6049c, Vernon's Civil Statutes of Texas."

Superior urges that even though its interests lie outside the pooled unit it is a "person or party at interest aggrieved" under the above Section 2(g), in that it is very much aggrieved by the order of the Commission. It urges that such order permits excess drainage of its property by determining that the unit contained 459 productive acres when it was its position, and it presented evidence to the effect, that the unit only contained 150 productive acres. It argues that as thus aggrieved by the order it is entitled to appeal under the Act and have a local Court review the evidence on drainage. Our view is that the phrase "any person . or party at interest aggrieved" refers back to the interest owners, who, with their property, are the subject of the Act. The rule that the intention of the Legislature must be ascertained from the entire Act has good application here, for the body of the Act is confined to owners, and it would not be consonant with that entire body to find that the Legislature made it applicable to the surrounding world by one simple phrase. The term "person or party at interest aggrieved". is descriptive of the interest owners, and a construction broadening that phrase to include outsiders not mentioned in the Act is unwarranted as there is nothing ambiguous or uncertain about the meaning of that phrase. There is nothing to indicate that the Legislature meant anyone other than the interest owners. The precise question which we have determined has not previously been decided by the Courts, but on other occasions when called upon to make an original construction of the Mineral Interest Pooling Act the Courts have closely construed the Act. Railroad Commission of Texas v. Miller, 434 S.W.2d 670 (Tex. 1968); Railroad Commission of Texas v. Coleman, 460 S.W.2d 404 (Tex.1970);

Northwest Oil Company v. Railroad Commission of Texas, 462 S.W.2d 371 (Tex. Civ.App.—Beaumont 1971, writ ref'd n. r. e.). In Miller, the Court construed Section 2(g) as inapplicable where the Commission's order was to *deny* pooling. It was held that this Section 2(g) was an exception to the general and more broadly stated provisions of Section 8 of Article 6049c, and that such exception applied only when the Commission order effected pooling, and that otherwise the parties must take their appeal under Section 8 of Article 6049c. The Court construed Section 2(g) as jurisdictional and not a venue provision. In the Northwest Oil Company case, it was held that the Railroad Commission did not have the authority to order pooling where there was no showing that the applicant therefor drilled or proposed to drill a well on the unit. In our case, Superior, not being an owner of an interest in the tract, could not voluntarily agree to pooling nor could it be subjected to pooling under the Act, and its appeal would only be under Section 8 of Article 6049c if the interest owners had voluntarily pooled. We conclude that it has no right of appeal under Article 6008c, the Compulsory Pooling Act.

We turn now to Exxon's dismissal from the lawsuit by the trial Court for the reason that its intervention came after the 30-day period provided by Article 6008c. The Commission's order effecting pooling was of November 28th and on December 6th the Commission issued another order correcting its order of the 28th. Exxon's intervention was not filed within the 30 days following the November 28th order but was filed within the 30 days following the December 6th order, and its position now is that the December 6th order is the controlling date for its appeal. We overrule this contention.

In passing on this matter, we should first note that the strict rules applicable to courts do not apply to administrative agencies, yet they are subject to the general legal principles regulating judicial tribunals. Railroad Commission of Texas v. Jackson, 315 S.W.2d 193 (Tex.Civ.App. —Austin 1958, writ ref'd n. r. e.). See also Texas State Board of Dental Examiners v. Blankfield, 433 S.W.2d 179 (Tex. Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). And it is well settled that under the general provisions of the law the Railroad Commission acts in a quasi judicial capacity. Magnolia Petroleum Co. v. Railroad Commission of Texas, 128 Tex. 189, 96 S.W.2d 273 (1936). First, it should be noted that the order of November 28th was the order which effected pooling and set out all of the matters adjudicated at some length. The order of December 6th is a one page document with the title of a special order correcting certain errors in the order of November 28th. It recites that the November 28th order contained certain errors which could be corrected to more precisely reflect the Commission's actions and the results of a complete land survey of the tract unitized. It then sets out three corrections, and that's the substance of it. Standing alone, it could not be a judgment. One correction was to the description and referred to a survey attached, and the second correction was a reference to the Mineral Interest Pooling Act as Article "8008c" although in other portions of the order it was correctly referred to as 6008c. The order then changed the percentage of participation of Exxon by about ⅕th of 1%. Much is made by Appellants of this last change as affecting the substantive rights of the parties and entitling them to take the December 6th order as the date of their appeal. We are unable to agree because the November 28th order specifically provided that if an on-the-ground survey should show that non-pooling owners have a greater or lesser portion of said 459-acre unit then the fractions set forth herein shall be accordingly adjusted. The rule of law covering this situation is well stated in McDonald, Texas Civil Practice, Vol. 4, § 17.03.3, at 42:

"A decree which fully determines the merits upon all disputed rights is final for appeal though additional ancillary

**484**

proceedings, such as the appointment of a receiver, the sale of property at a price subject to the court's approval, or other collateral actions, may become necessary to put it into effect or to enforce its collection. * * * "

Citing as authority: Ferguson v. Ferguson, 161 Tex. 184, 338 S.W.2d 945 (1960); Waters-Pierce Oil Co. v. State, 107 Tex. 1, 106 S.W. 326 (1907). Appellants urge that this was a nunc pro tunc entry within the meaning of Rule 306b, Texas Rules of Civil Procedure, which provides that the date of appeal shall be from the date of rendition of a nunc pro tunc judgment. The Supreme Court has held in the case of Rayburn v. State, 163 Tex. 450, 356 S.W.2d 774 (1962), that the Rules of Civil Procedure do not operate to extend the time provided by statute within which an appeal may be taken to the courts in a proceeding originally administrative in nature. Additionally, in this case, there was no attempt to comply with the provisions of Texas Rules of Civil Procedure 316 and 317 which provide for notice to all parties and a hearing before the entry of a nunc pro tunc judgment. Appellants further contend that the Commission was changing their appeal period of time and was beyond its authority in reciting in the correction order that the effective date of its order should remain as November 28th. This we view as a statement by the Commission to avoid any confusion or misunderstanding. Such a statement would not control, as what was done in the order as affecting substantive rights would control and not any statement by the Commission.

Appellants contend that Exxon was entitled to intervene at the date which it did because Superior had timely filed its suit. We have held that the Court in Ward County was without jurisdiction and that the jurisdiction of any appeal by Superior was in Travis County. The Ward County District Court not having jurisdiction of Superior's cause there was no case pending when Exxon sought to intervene. The provisions of Article 6008c are jurisdic-

tional. Railroad Commission of Texas v. Miller, supra.

 Appellants contend that in any event the judgment or order of the Commission was void. We find this point of error to be without merit. In the first place, there is a presumption that orders of the Railroad Commission are valid and Appellants have not offered evidence to overcome this presumption. Also the grounds on which they maintain that the order is void would require the Court to make a determination which it could not make since it never acquired jurisdiction of the case. Exxon has no right to attack the orders as void in Ward County after the 30-day appeal limitation of Article 6008c, Section 2(g).

All assignments of error have been considered and all are overruled. The judgment of the trial Court is affirmed.