**V–F PETROLEUM, INC., et al., Appellants,**

v.

**A.K. GUTHRIE OPERATING COMPANY, Appellee.**

**No. 3–88–057–CV.**

Court of Appeals of Texas, Austin.

May 30, 1990.

Paul Herrmann, McElroy, Williams & Sullivan, Austin, for V–F Petroleum, Inc.

Jim Mattox, Atty. Gen., Jose Manuel Rangel, Asst. Atty. Gen., Austin, for The R.R. Comm'n of Texas.

Carroll Martin, Scott, Douglass & Luton, Austin, for appellee.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

OPINION

GAMMAGE, Justice.

Appellants, V–F Petroleum, Inc., and the Railroad Commission of Texas, appeal from a judgment of the district court of Travis County that reversed an order of the Commission and remanded the proceeding to the agency. By its order, the Commission denied the application of appellee A.K. Guthrie Operating Company ("Guthrie") for an amendment to the field rules of the Sara–Mag (Canyon Reef) Field. We will reverse the judgment of the district court.

In 1954, the Commission adopted for the Sara–Mag (Canyon Reef) Field an allocation formula based fifty percent upon surface acreage and fifty percent upon the number of wells producing ("50–50 allocation formula"). An allocation formula is the means the Commission uses to prorate oil production among wells in a field. A 50–50 allocation formula was common in field rules promulgated before 1961 and favored production from small tracts. *See generally Railroad Comm'n v. Humble Oil & Refining Co.*, 193 S.W.2d 824 (Tex. Civ.App.1946, writ ref'd n.r.e.), *aff'd*, 331 U.S. 791, 67 S.Ct. 1523, 91 L.Ed. 1820

(1947); 2 Smith & Weaver, *Texas Law of Oil and Gas* § 10.3(D) (1989).

In March 1982, V–F Petroleum's predecessor in interest filed an application requesting a permit to drill a well on a substandard-sized tract within the field. Texas Railroad Comm'n, 16 Tex.Admin. Code § 3.37 (West March 1, 1990) ("Rule 37"). Guthrie protested this request for a Rule 37 exception and filed an application to amend the field allocation formula to a one-hundred percent acreage formula. Guthrie owns land on three sides of the 2.5–acre tract in which V–F Petroleum holds an interest and operates eight of the ten wells in the field. After a hearing, the Commission granted V–F Petroleum a Rule 37 exception allowing it to drill on its tract.

Shortly thereafter, the Commission held a hearing on Guthrie's application to amend the allocation formula in which V–F Petroleum intervened. The Commission denied the application on the basis that the requested allocation formula would effectively disallow a well on the V–F Petroleum tract and that V–F Petroleum had been denied an opportunity to pool. Guthrie filed a petition for judicial review of the order in the district court of Travis County. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (Supp.1990). On August 2, 1983, the district court reversed the order and remanded the proceeding to the agency. In June 1984, the Commission reopened the hearing and, after receiving additional evidence, again denied Guthrie's application to amend the allocation formula.

Guthrie then filed a second petition for judicial review in district court. The district court reversed the agency order on the basis that the 50–50 allocation formula was "illegal" because it used a per-well factor in conflict with the holdings in *Railroad Comm'n v. Shell Oil Co.*, 380 S.W.2d 556 (Tex.1964); *Halbouty v. Railroad Comm'n*, 163 Tex. 417, 357 S.W.2d 364 (1962); *Atlantic Refining Co. v. Railroad Comm'n*, 162 Tex. 274, 346 S.W.2d 801 (1961). On appeal, this Court determined that these cases did not preclude the Commission's use of per-well factor, reversed the district court judgment, and remanded the cause for consideration of the parties' substantial evidence points. *Railroad Comm'n v. A.K. Guthrie Operating Co.*, 742 S.W.2d 86 (Tex.App.1987, no writ).

On remand, the district court entered judgment reversing the Commission's order because it was not supported by substantial evidence and again remanded the proceeding to the agency. The court concluded further that "the present allocation formula in the Sara Mag ... Field is illegal and has been illegal since this Court's final judgment of August 2, 1983 ... for lack of substantial evidence." This judgment underlies the appeal now before this Court.

■ We first note that, when a case is remanded to the district court with instructions, that court's authority is limited to trying only those issues specified in the appellate court mandate. *Texacally Joint Venture v. King*, 719 S.W.2d 652 (Tex.App. 1986, writ ref'd n.r.e.); *Humble Oil & Refining Co. v. Kishi*, 299 S.W. 687, 689 (Tex.Civ.App.1927, writ ref'd). In the instant cause, this Court's opinion and mandate limited the district court to a determination whether the Commission's order was reasonably supported by substantial evidence. *A.K. Guthrie Operating Co.*, 742 S.W.2d at 88. Furthermore, our determination that the Commission order was not affected by an error of law as to the use of a per-well factor is the law of the case. *See Texacally Joint Venture*, 719 S.W.2d at 653; *Miller v. Winn*, 28 S.W.2d 578 (Tex.Civ.App.1930, writ ref'd).

■ In their first points of error, appellants contend that the district court erred in concluding that the Commission's order was not supported by substantial evidence. Texas Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e)(5) (Supp.1990) authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole. Although substantial evidence is more than a mere scintilla, the evidence in the record may preponderate against the decision of the agency and nevertheless amount to substantial evi-

dence. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the agency's action. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446 (Tex. 1984); *see Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946). The agency's action, therefore, will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action. *Charter Medical,* 665 S.W.2d at 453; *Suburban Utility Corp. v. Public Utility Comm'n of Texas,* 652 S.W.2d 358, 364 (Tex.1983).

In its motion for rehearing in the Commission and in its first amended petition in district court, Guthrie asserted that the Commission's findings of fact ten, eleven, and thirteen through fifteen; and conclusions of law five, eight, and nine were not supported by substantial evidence. Accordingly, appellants here argue that these findings and conclusions are supported by substantial evidence. *See Suburban Utility,* 652 S.W.2d at 365; *Purolator Armored, Inc. v. Railroad Comm'n,* 662 S.W.2d 709, 714 (Tex.App.1983, no writ) (cannot raise on appeal argument not raised in motion for rehearing).

Finding of fact eleven states:

No opportunity is available to the owners of the 2.5 acres to pool the tract with any of the surrounding units.

a. Guthrie twice has indicated an affirmative disinclination to pool the 2.5 acres.

b. The discovery date for the field precedes the date of the Mineral Interest Pooling Act.

Conclusion of law five states:

Given the inability of the [V–F Petroleum] tract owners to pool their acreage either voluntarily or pursuant to the provisions of the Mineral Interest Pooling Act, a well on the 2.5 acre tract is necessary if they are to have a fair chance to

recover their fair share of the Sara–Mag (Canyon Reef) Field.

■■■ The Mineral Interest Pooling Act ("MIPA"), Tex.Nat.Res. Code Ann §§ 102.-001 et seq. (1978), permits the Commission to order mineral owners whose land shares a common reservoir to pool their interests to prevent unnecessary drilling, to protect correlative rights, or to prevent waste. MIPA § 102.011; *Railroad Comm'n v. Broussard,* 755 S.W.2d 951, 952 (Tex.App. 1988, writ denied); *see Superior Oil Co. v. Railroad Comm'n,* 519 S.W.2d 479 (Tex. Civ.App.1975, writ ref'd n.r.e.). The Act's provisions do not apply to any reservoir discovered and produced before March 8, 1961. MIPA § 102.003. The reservoir here was discovered in 1954 and six wells developed during 1954 and 1955. Clearly, the provisions of the MIPA do not apply to this reservoir.

■■■ In regard to pooling generally, Mr. E.E. Runyan [1] testified that he had twice contacted Mr. Guthrie to discuss the possibility of pooling and that each time Guthrie stated that "he could not possibly take [V–F Petroleum] into the well" and that there was no basis for negotiations on pooling. As stated previously, Guthrie owns tracts on three sides of V–F Petroleum. Runyan testified that the tract on the fourth side covers the same reservoir; that he does not know who owns the tract; that he could, but has not attempted to, learn who owns the tract; that the only drilling on that tract resulted in a dry hole; and that he is ready to pool and to bear his share of the costs.

Appellee characterizes the record as having "no evidence of any serious effort or offer to pool because V–F made none." The record does indicate that Runyan did contact Guthrie and reflects Runyan's impression that it was not profitable to pursue pooling with Guthrie. The Commission, of course, was the judge of the weight to be accorded the evidence presented. *Southern Union Gas Co. v. Railroad*

---

1. Mr. Runyan is an independent oil operator, owns the 2.5 acre lease, and testified as an expert in petroleum engineering.

*Comm'n,* 692 S.W.2d 137, 141 (Tex.App. 1985, writ ref'd n.r.e.).

■ The remaining findings of fact and conclusions of law in question state:

10. If the requested change in the allocation formula is approved, no well will be drilled on the 2.5 acres.

a. No reasonably prudent operator would drill a well expecting a 304 year payout;

b. Runyan testified that he would not develop the 2.5 acre tract if the allocation formula is changed to 100% acreage.

13. A well on the 2.5 acre ... lease could compete with upstructure wells to the west for reserves swept from undeveloped acreage as well as for the reserves underlying the 2.5 acres. Without a well, the reserves underlying the 2.5 acres will move off the lease and be recovered by one or more wells in which the owners of the 2.5 acres have no interest.

14. A 100% acreage allocation formula would restrict Runyan to producing only the reserves underlying the 2.5 acres, while Guthrie could produce from the reservoir as a whole and ultimately recover hydrocarbons from the 2.5 acre tract and from unleased acreage without competition and without regard to lease line or field-wide drainage.

15. The per-well factor in the allocation formula for the Sara–Mag (Canyon Reef) Field has not occasioned the loss of any hydrocarbons to Guthrie's leases, nor prevented Guthrie from recovering his fair share of the reservoir.

8. The per-well factor in the allocation formula of the Sara–Mag (Canyon Reef) Field has not led to any drainage of [A.K. Guthrie] acreage, nor inhibited its ability to produce its fair share of the reservoir.

9. The retention of the per-well factor in the allocation formula of the Sara–Mag (Canyon Reef) Field will permit Guthrie and Runyan both to compete for their fair share of the reservoir.

The evidence adduced at the first hearing in 1982 and at the reopened hearing in 1984 shows that the 2.5 acre tract does not have a producing well; that the oil is swept from the east across the 2.5 acre tract to the Guthrie tracts on the west; that, if no well is drilled on the 2.5 acres, the underlying oil will be produced from the well on the tract to the west; and that the current allowable allows a well to produce more oil than underlies the tract. Mr. Glenn George, a consulting petroleum engineer, testified that the amount of oil underlying the tract was approximately 8750 barrels; that the cost of drilling for and producing the oil ranged from $350,000 to $450,000; that, even at the lower cost, the value of the oil underneath the tract would not return the drilling cost; and that, during the next five years under the 50–50 allocation formula, a well would produce approximately 95,000 barrels from adjacent tracts. Mr. Runyan testified that his estimated cost was $419,300; that, under a 100% acreage formula, the well could produce eight barrels of oil per day and the payout would be 304 years; and that, in his opinion, no rational person would drill a well with a 304–year payout. He testified further that, with the 50–50 allocation formula, the well could produce sixty-four barrels per day with a one-year payout; and that he estimated that production would actually be fifty barrels per day.

Based on our review of the agency record, we conclude that findings of fact 10, 11, 13, 14 and 15; and conclusions of law 5, 8, and 9 are reasonably supported by substantial evidence. We sustain the first points of error of the Railroad Commission and V–F Petroleum.

The Commission and V–F Petroleum next argue that the district court erred in its finding that the allocation formula is illegal and has been illegal since its judgment of August 2, 1983. The judgment underlying this appeal stated, "[I]t is further ORDERED that the present allocation formula in said field is illegal and has been illegal since this Court's final judgment of August 2, 1983 for lack of substantial evidence...." The parties suggest that the district court has usurped the authority of

the agency in attempting to prescribe what order the agency should enter and has violated the mandate of this Court. The Commission asserts additionally that the date used has no support in the record.

We need not address these arguments. The district court couched its holding in terms of substantial evidence, the issue which this Court remanded to the district court. Having determined that the agency order is supported by substantial evidence, we need not address the Commission's point of error two or V–F Petroleum's point of error three. We note the proper inquiry is not the legality of the current formula, but whether the Commission order denying a request to amend the allocation formula is supported by substantial evidence.

■ V–F Petroleum, in its second point of error, argues that the district court erred in failing to file conclusions of law after a timely request and reminder. Tex. R.Civ.P.Ann. 296, 297 (Supp.1990). Because of our disposition of the appellants' first points of error we conclude that V–F Petroleum was not harmed by the error, if any, and overrule the point of error. Tex. R.App.P.Ann. 81(b)(1) (Supp.1990); *Texas–New Mexico Power Co. v. Texas Industrial Energy Consumers*, 786 S.W.2d 795 (Tex. App.1990, writ filed); *Galveston Bay Conservation and Preservation Ass'n v. Texas Air Control Bd.*, 586 S.W.2d 634, 639 (Tex. Civ.App.1979, writ ref'd n.r.e.).

We reverse the judgment of the district court and render judgment that the order of the Railroad Commission denying A.K. Guthrie's request to amend the field rules of the Sara–Mag (Canyon Reef) Field be affirmed.