NO. 07-07-0357-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 8, 2008

______________________________



S & J INVESTMENTS, APPELLANT



V.



AMERICAN STAR ENERGY AND MINERALS CORPORATION, APPELLEE

_________________________________



FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 29150-A; HONORABLE WILLIAM D. SMITH, JUDGE

_______________________________





Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.





MEMORANDUM OPINION





          Appellant, S & J Investments (S & J), appeals a judgment entered in favor of
appellee, American Star Energy and Minerals Corp. (American Star), for contractual
overhead charges and expenses related to operations on an oil and casinghead gas lease. 
We affirm.
 
 
Factual and Procedural Background
          In 1980, S & J bought a five percent working interest in an oil and casinghead lease,
known as the Bearkiller lease. The Bearkiller lease was covered by an operating
agreement. In 1987, American Star ratified the operating agreement and became the
operator of the lease. 
          Pursuant to the operating agreement, the operator of the lease was entitled to
payment from non-operators for expenses and overhead charges for each producing well
on the lease in proportion to the non-operator’s lease interest. However, the agreement
did not allow overhead or expenses to be charged for non-producing wells. S & J paid all
billed expenses and overhead until August of 1990. From August of 1990 until March of
1996, American Star billed S & J for expenses and overhead for 21 wells. From April of
1996 until June of 1998, American Star billed S & J for expenses and overhead for 18
wells. S & J did not pay any of the billed amounts during the period from August of 1990
through June of 1998. The total billed amount for this period was $34,241.32.


 
          To collect this debt, American Star brought the present suit. In response to
American Star’s suit, S & J counterclaimed for breach of the operating agreement,
negligence, gross negligence, breach of the duty of good faith and fair dealing, usury, and
fraud. The trial court granted partial summary judgment as to S & J’s breached duty of
good faith and usury allegations and awarded American Star $34,241.32 in “uncontested”
damages. The remaining issues then proceeded to trial. The trial court granted directed
verdict on S & J’s claims of fraud, willful misconduct, and gross negligence. In the end,
only a question related to how interest was to be compounded and the amount of
attorney’s fees was submitted to the jury. Judgment was entered on the verdict and S &
J appealed. 
          This Court reviewed S & J’s appeal. As a result of this review, we reversed the
judgment’s award of $34,241.32 to American Star and the award of attorney’s fees. S &
J Investments v. Amer. Star Energy and Minerals Corp., No. 07-99-0090-CV, 2001
Tex.App. LEXIS 7730, at *18-*19 (Tex.App.–Amarillo Nov. 7, 2001, no pet.). However, in
all other respects, we affirmed the judgment of the trial court. Id. 
          Upon remand, American Star again moved for summary judgment, but included the
evidence that had been omitted from its prior motion. The trial court sent a letter to both
parties informing them that the trial court was denying American Star’s motion for summary
judgment, but that the case would “proceed to trial only on those narrow matters remanded
under the Opinion and the Mandate of the Seventh Court of Appeals-those being the
issues of the amounts owed, if any, by the Defendant under the operating agreement and
the matter of attorney’s fees, if any” (emphasis in original). At the subsequent trial, S & J 
sought to offer the testimony of Alan Leach, a field inspector for the Texas Railroad
Commission, about the inactivity of some of the wells on the Bearkiller lease. The trial
court excluded this evidence, but allowed S & J to make an offer of proof of how Leach
would have testified. S & J was allowed to admit three witnesses’ testimony that not all of
the wells that American Star had charged expenses and overhead for had actually been
producing at the times that correspond to the charges. 
          At the close of evidence, the jury returned a verdict in favor of American Star,
awarding it $32,241.32 in damages under the operating agreement as well as $81,381.40
in attorney’s fees. The trial court subsequently entered judgment on the verdict and S &
J appealed.
          S & J contends that the trial court erred in (1) excluding S & J’s expert’s testimony,
(2) ruling that the “Law of the Case” doctrine prevented S & J from presenting defenses,
and (3) awarding attorney’s fees to American Star. 
Exclusion of Leach’s Testimony
          By its first issue, S & J contends that the trial court erred in excluding the testimony
of Alan Leach. Leach testified that he had worked for 17 years as an oil and gas pumper. 
In his time working as a pumper, Leach was the supervisor over 42 wells covered by 14
leases. In January of 1998, Leach began working as a field inspector with the oil and gas
division of the Texas Railroad Commission. In September of 1998, Leach performed a
routine lease inspection of the Bearkiller lease. During his inspection of the Bearkiller
lease, Leach saw only three operating wells, while he saw at least 16 wells that were not
operating. In addition, Leach noted that a number of the inactive wells had accumulations
of rust on their sheaves. When pressed, Leach opined that it would have taken six months
of inactivity for the rust to have built up on the sheaves. 
          The decision to exclude evidence at trial is committed to the trial court’s sound
discretion. Tex. Dep’t of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); City of
Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court does not abuse
its discretion in excluding evidence unless it acts without reference to guiding rules or
principles or acts arbitrarily or unreasonably. Cire v. Cummings, 134 S.W.3d 835, 838-39
(Tex. 2004). 
          Initially, we note that Leach did not observe the wells on the Bearkiller lease until 
two to three months after the last period for which overhead charges were assessed. 
Thus, the fact that 16 wells were inactive in September of 1998 reveals nothing about the
status of those wells in June of 1998. Consequently, the mere fact that these wells were
inactive in September of 1998 was irrelevant to the issues before the trial court. See Tex.
R. Evid. 401. 
          However, Leach testified that there was rust on the sheaves of a number of these
inactive wells and that, for rust to have formed on the sheaves, the wells had to have been
inactive for six months. While evidence that these wells were inactive for six months prior
to Leach’s September inspection would be relevant to the issues in this case, Leach’s
opinion regarding how long the wells had to have been inactive for rust to form on the
sheaves must also be shown to be reliable. See E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 556 (Tex. 1995). A trial court must assess the admissibility
of expert testimony and is afforded broad discretion in doing so. Exxon Pipeline Co. v.
Zwahr, 88 S.W.3d 623, 629 (Tex. 2002). The burden of proving that a testifying expert
possesses special knowledge as to the very matter upon which he proposes to give an
opinion rests on the party offering the testimony. Gammill v. Jack Williams Chevrolet, Inc.,
972 S.W.2d 713, 718 (Tex. 1998). Nothing in the testimony of Leach identified the basis
for his opinion that the rusted wells had been inactive for six months. Further, while Leach
had been a pumper for 17 years, he did not testify that he had any specialized knowledge
relating to the formation of rust on inactive oil wells. In fact, Leach’s testimony does not
indicate that he had ever before observed rust on an inactive well. Thus, we conclude that
the trial court did not abuse its discretion in excluding Leach’s opinion regarding the period
that the Bearkiller lease wells were inactive as unreliable.
          S & J contends that, even if Leach could not give his opinion as an expert, he should
have been allowed to testify as to his lay opinion under Texas Rule of Evidence 701. 
Under Rule 701, a non-expert may provide opinion testimony if that opinion is rationally
based on the perception of the witness and will be helpful to a clear understanding of the
witness’s testimony. Tex. R. Evid. 701. However, in the present context, Leach’s factual
observation that 16 wells were inactive two to three months after the last billed period is
irrelevant and his unreliable opinion regarding how long the wells had been inactive based
on the accumulation of rust is not helpful to a clear understanding of the witness’s
testimony, but is instead misleading to the jury. Thus, we cannot say that the trial court
abused its discretion by excluding Leach’s lay opinion testimony under Texas Rule of
Evidence 701.
          We conclude that the trial court did not abuse its discretion in excluding the
testimony of Leach and overrule S & J’s first issue.
The Law of the Case
          Next, S & J contends that the trial court erred in ruling that the “Law of the Case”
doctrine prevented S & J from presenting defenses in the case.


 S & J’s contention flows
from a letter that the trial court sent to the parties in response to a motion for summary
judgment filed by American Star. In that letter, the trial court denied the summary
judgment motion and stated that it would “proceed to trial only on those narrow matters
remanded under the Opinion and the Mandate of the Seventh Court of Appeals . . . .” In
addition, S & J contends that the trial court improperly precluded its presentation of
evidence that certain actions of American Star in relation to the Bearkiller lease were illegal
or constituted intentional mismanagement. 
          The Mandate of this Court stated that, 
. . . it is ordered, adjudged and decreed that the portion of the final judgment
and the interlocutory summary judgment awarding American Star Energy and
Minerals Corporation $32,241.32,


 pre and post judgment interest on that
sum, and attorney’s fees is reversed and remanded to the trial court for
further proceedings. In all other respects the judgment is affirmed.
 
          When an appellate court remands a case with specific instructions, the trial court
must comply with the instructions and cannot relitigate issues controverted in the former
trial. See Denton County v. Tarrant County, 139 S.W.3d 22, 23 (Tex.App.–Fort Worth
2004, pet. denied); V-F Petroleum, Inc. v. A.K. Guthrie Operating Co., 792 S.W.2d 508,
510 (Tex.App.–Austin 1990, no writ). In interpreting the mandate of an appellate court, the
appellate court’s opinion should be considered. Denton County, 139 S.W.3d at 23. 
          We note that this Court’s Mandate remanded the case on the issues of damages
owed to American Star, calculation of the appropriate amount of pre and post judgment
interest on that award, and attorney’s fees. In all other respects, the judgment of the trial
court was affirmed. The judgment of the trial court that was reviewed in the former appeal
included a summary judgment on the issue of S & J’s liability based on its failure to comply
with a provision of the operating agreement that required interest owners to contest
charges in writing within a certain period of time and a directed verdict on S & J’s claims
of intentional mismanagement. See S & J Investments, 2001 Tex.App. LEXIS 7730, at *2-*3. Thus, any issues relating to the trial court’s rulings on S & J’s liability under the
operating agreement or claims of intentional mismanagement were previously affirmed by
this Court and were not remanded by this Court’s prior Mandate.
          S & J never established how the preclusion of its presentation of either defense
prevented it from presenting evidence relevant to the amount of damages due to American
Star, the appropriate amount of pre and post judgment interest, or the award of attorney’s
fees. The only evidence offered in relation to intentional mismanagement was evidence
that a pumper was sent to drive around a well. S & J contended that this evidence shows
that there were inactive wells on the Bearkiller lease that American Star was attempting to
make appear to be producing. However, this is not evidence regarding whether any of the
wells for which expenses and overhead was charged during the relevant period were, in
fact, not producing during the times when such charges were assessed by American Star. 
As to the illegality, S & J attempted to elicit testimony that would, at best, have established
that the drilling operations performed by American Star were illegally performed. S & J did
not offer any evidence that the operating agreement precluded the assessment of
expenses and overhead charges against interest owners for illegally drilled, but producing,
wells. Thus, even if S & J had established its defense of illegality, it would have been
wholly irrelevant to the issues before the trial court.


 
          As a prerequisite to presenting a complaint on appeal, the record must show that
a timely complaint was made to the trial court that specified the grounds for the complaint
and that the trial court ruled or refused to rule on the complaint. See Tex. R. App. P. 33.1. 
In addition, to complain on appeal about a matter that would not otherwise appear in the
record, the complaining party must file a formal bill of exception with the trial court. See
Tex. R. App. P. 33.2. 
          In the present case, S & J complains that the trial court’s “Law of the Case” ruling
prevented it from offering evidence of defenses to American Star’s claim of damages under
the operating agreement. However, nothing in the record indicates that S & J ever
objected to the trial court’s “Law of the Case” ruling. The only defensive evidence offered
by S & J that was excluded by the trial court was evidence that a pumper was asked to
drive around a well to make tracks. In addition, the trial court limited the scope of S & J’s
questioning of Carroll Beaman, President of American Star, regarding certain drilling
activities on the Bearkiller lease that may have been illegal.


 However, in neither of these
instances did S & J file a formal bill of exception or otherwise specify how it was denied the
opportunity to present its defenses by the trial court’s rulings. In other words, S & J failed
to establish how it was harmed by these rulings of the trial court. Further, because S & J
did not attempt to make a bill of exception at trial, we cannot say that it was prevented from
properly presenting the case to this Court.


 We may not reverse a judgment based on the
exclusion of evidence unless we determine that the exclusion probably resulted in an
improper judgment. Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004). 
As a result, we conclude that the trial court did not abuse its discretion and overrule S &
J’s second issue.

Attorney’s Fees
          S & J’s third issue is conditioned on our sustaining one of the issues addressed
above.


 Since we have overruled each of S & J’s first two issues, we need not address its
third issue. See Tex. R. App. P. 44.1(a).
Conclusion
          Having overruled each of S & J’s issues, we affirm the judgment of the trial court.
 
                                                                           Mackey K. Hancock

                                                                                     Justice