NO. 07-07-0357-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 8, 2008
_____

S & J INVESTMENTS, APPELLANT

V.

AMERICAN STAR ENERGY AND MINERALS CORPORATION, APPELLEE
_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 29150-A; HONORABLE WILLIAM D. SMITH, JUDGE
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, S & J Investments (S & J), appeals a judgment entered in favor of appellee, American Star Energy and Minerals Corp. (American Star), for contractual overhead charges and expenses related to operations on an oil and casinghead gas lease. We affirm.

Factual and Procedural Background

In 1980, S & J bought a five percent working interest in an oil and casinghead lease, known as the Bearkiller lease. The Bearkiller lease was covered by an operating agreement. In 1987, American Star ratified the operating agreement and became the operator of the lease.

Pursuant to the operating agreement, the operator of the lease was entitled to payment from non-operators for expenses and overhead charges for each producing well on the lease in proportion to the non-operator's lease interest. However, the agreement did not allow overhead or expenses to be charged for non-producing wells. S & J paid all billed expenses and overhead until August of 1990. From August of 1990 until March of 1996, American Star billed S & J for expenses and overhead for 21 wells. From April of 1996 until June of 1998, American Star billed S & J for expenses and overhead for 18 wells. S & J did not pay any of the billed amounts during the period from August of 1990 through June of 1998. The total billed amount for this period was $34,241.32.[1]

To collect this debt, American Star brought the present suit. In response to American Star's suit, S & J counterclaimed for breach of the operating agreement, negligence, gross negligence, breach of the duty of good faith and fair dealing, usury, and fraud. The trial court granted partial summary judgment as to S & J's breached duty of good faith and usury allegations and awarded American Star $34,241.32 in "uncontested"

---

[1] The total charges billed were $40,195.01. However, American Star agreed to reduce the billed amount by $5,953.69 for overcharges related to certain wells that the evidence established were not producing during the relevant time period.

damages. The remaining issues then proceeded to trial. The trial court granted directed verdict on S & J's claims of fraud, willful misconduct, and gross negligence. In the end, only a question related to how interest was to be compounded and the amount of attorney's fees was submitted to the jury. Judgment was entered on the verdict and S & J appealed.

This Court reviewed S & J's appeal. As a result of this review, we reversed the judgment's award of $34,241.32 to American Star and the award of attorney's fees. S & J Investments v. Amer. Star Energy and Minerals Corp., No. 07-99-0090-CV, 2001 Tex.App. LEXIS 7730, at *18-*19 (Tex.App.–Amarillo Nov. 7, 2001, no pet.). However, in all other respects, we affirmed the judgment of the trial court. Id.

Upon remand, American Star again moved for summary judgment, but included the evidence that had been omitted from its prior motion. The trial court sent a letter to both parties informing them that the trial court was denying American Star's motion for summary judgment, but that the case would "proceed to trial **only** on those narrow matters remanded under the Opinion and the Mandate of the Seventh Court of Appeals-those being the issues of the amounts owed, if any, by the Defendant under the operating agreement and the matter of attorney's fees, if any" (emphasis in original). At the subsequent trial, S & J sought to offer the testimony of Alan Leach, a field inspector for the Texas Railroad Commission, about the inactivity of some of the wells on the Bearkiller lease. The trial court excluded this evidence, but allowed S & J to make an offer of proof of how Leach would have testified. S & J was allowed to admit three witnesses' testimony that not all of

the wells that American Star had charged expenses and overhead for had actually been producing at the times that correspond to the charges.

At the close of evidence, the jury returned a verdict in favor of American Star, awarding it $32,241.32 in damages under the operating agreement as well as $81,381.40 in attorney's fees. The trial court subsequently entered judgment on the verdict and S & J appealed.

S & J contends that the trial court erred in (1) excluding S & J's expert's testimony, (2) ruling that the "Law of the Case" doctrine prevented S & J from presenting defenses, and (3) awarding attorney's fees to American Star.

Exclusion of Leach's Testimony

By its first issue, S & J contends that the trial court erred in excluding the testimony of Alan Leach. Leach testified that he had worked for 17 years as an oil and gas pumper. In his time working as a pumper, Leach was the supervisor over 42 wells covered by 14 leases. In January of 1998, Leach began working as a field inspector with the oil and gas division of the Texas Railroad Commission. In September of 1998, Leach performed a routine lease inspection of the Bearkiller lease. During his inspection of the Bearkiller lease, Leach saw only three operating wells, while he saw at least 16 wells that were not operating. In addition, Leach noted that a number of the inactive wells had accumulations of rust on their sheaves. When pressed, Leach opined that it would have taken six months of inactivity for the rust to have built up on the sheaves.

-4-

The decision to exclude evidence at trial is committed to the trial court's sound discretion. Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000); City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A trial court does not abuse its discretion in excluding evidence unless it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004).

Initially, we note that Leach did not observe the wells on the Bearkiller lease until two to three months after the last period for which overhead charges were assessed. Thus, the fact that 16 wells were inactive in September of 1998 reveals nothing about the status of those wells in June of 1998. Consequently, the mere fact that these wells were inactive in September of 1998 was irrelevant to the issues before the trial court. See TEX. R. EVID. 401.

However, Leach testified that there was rust on the sheaves of a number of these inactive wells and that, for rust to have formed on the sheaves, the wells had to have been inactive for six months. While evidence that these wells were inactive for six months prior to Leach's September inspection would be relevant to the issues in this case, Leach's opinion regarding how long the wells had to have been inactive for rust to form on the sheaves must also be shown to be reliable. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995). A trial court must assess the admissibility of expert testimony and is afforded broad discretion in doing so. Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex. 2002). The burden of proving that a testifying expert possesses special knowledge as to the very matter upon which he proposes to give an

opinion rests on the party offering the testimony. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). Nothing in the testimony of Leach identified the basis for his opinion that the rusted wells had been inactive for six months. Further, while Leach had been a pumper for 17 years, he did not testify that he had any specialized knowledge relating to the formation of rust on inactive oil wells. In fact, Leach's testimony does not indicate that he had ever before observed rust on an inactive well. Thus, we conclude that the trial court did not abuse its discretion in excluding Leach's opinion regarding the period that the Bearkiller lease wells were inactive as unreliable.

S & J contends that, even if Leach could not give his opinion as an expert, he should have been allowed to testify as to his lay opinion under Texas Rule of Evidence 701. Under Rule 701, a non-expert may provide opinion testimony if that opinion is rationally based on the perception of the witness and will be helpful to a clear understanding of the witness's testimony. TEX. R. EVID. 701. However, in the present context, Leach's factual observation that 16 wells were inactive two to three months after the last billed period is irrelevant and his unreliable opinion regarding how long the wells had been inactive based on the accumulation of rust is not helpful to a clear understanding of the witness's testimony, but is instead misleading to the jury. Thus, we cannot say that the trial court abused its discretion by excluding Leach's lay opinion testimony under Texas Rule of Evidence 701.

We conclude that the trial court did not abuse its discretion in excluding the testimony of Leach and overrule S & J's first issue.

The Law of the Case

Next, S & J contends that the trial court erred in ruling that the "Law of the Case" doctrine prevented S & J from presenting defenses in the case.[2] S & J's contention flows from a letter that the trial court sent to the parties in response to a motion for summary judgment filed by American Star. In that letter, the trial court denied the summary judgment motion and stated that it would "proceed to trial **only** on those narrow matters remanded under the Opinion and the Mandate of the Seventh Court of Appeals . . . ." In addition, S & J contends that the trial court improperly precluded its presentation of evidence that certain actions of American Star in relation to the Bearkiller lease were illegal or constituted intentional mismanagement.

The Mandate of this Court stated that,

> . . . it is ordered, adjudged and decreed that the portion of the final judgment and the interlocutory summary judgment awarding American Star Energy and Minerals Corporation $32,241.32,[3] pre and post judgment interest on that sum, and attorney's fees is reversed and remanded to the trial court for further proceedings. In all other respects the judgment is affirmed.

When an appellate court remands a case with specific instructions, the trial court must comply with the instructions and cannot relitigate issues controverted in the former trial. See Denton County v. Tarrant County, 139 S.W.3d 22, 23 (Tex.App.–Fort Worth

---

[2] Nothing in the record indicates that the trial court expressly ruled that it would apply the "Law of the Case" doctrine.

[3] The identification of the amount of damages in this Court's Mandate was incorrect. However, it is clear that the Mandate remanded the issue of the proper amount of damages and, therefore, this scrivener's error is of no import.

2004, pet. denied); V-F Petroleum, Inc. v. A.K. Guthrie Operating Co., 792 S.W.2d 508, 510 (Tex.App.–Austin 1990, no writ).  In interpreting the mandate of an appellate court, the appellate court's opinion should be considered.  Denton County, 139 S.W.3d at 23.

We note that this Court's Mandate remanded the case on the issues of damages owed to American Star, calculation of the appropriate amount of pre and post judgment interest on that award, and attorney's fees.  In all other respects, the judgment of the trial court was affirmed.  The judgment of the trial court that was reviewed in the former appeal included a summary judgment on the issue of S & J's liability based on its failure to comply with a provision of the operating agreement that required interest owners to contest charges in writing within a certain period of time and a directed verdict on S & J's claims of intentional mismanagement.  See S & J Investments, 2001 Tex.App. LEXIS 7730, at *2-*3.  Thus, any issues relating to the trial court's rulings on S & J's liability under the operating agreement or claims of intentional mismanagement were previously affirmed by this Court and were not remanded by this Court's prior Mandate.

S & J never established how the preclusion of its presentation of either defense prevented it from presenting evidence relevant to the amount of damages due to American Star, the appropriate amount of pre and post judgment interest, or the award of attorney's fees.  The only evidence offered in relation to intentional mismanagement was evidence that a pumper was sent to drive around a well.  S & J contended that this evidence shows that there were inactive wells on the Bearkiller lease that American Star was attempting to make appear to be producing.  However, this is not evidence regarding whether any of the wells for which expenses and overhead was charged during the relevant period were, in

fact, not producing during the times when such charges were assessed by American Star. As to the illegality, S & J attempted to elicit testimony that would, at best, have established that the drilling operations performed by American Star were illegally performed. S & J did not offer any evidence that the operating agreement precluded the assessment of expenses and overhead charges against interest owners for illegally drilled, but producing, wells. Thus, even if S & J had established its defense of illegality, it would have been wholly irrelevant to the issues before the trial court.[4]

As a prerequisite to presenting a complaint on appeal, the record must show that a timely complaint was made to the trial court that specified the grounds for the complaint and that the trial court ruled or refused to rule on the complaint. See TEX. R. APP. P. 33.1. In addition, to complain on appeal about a matter that would not otherwise appear in the record, the complaining party must file a formal bill of exception with the trial court. See TEX. R. APP. P. 33.2.

In the present case, S & J complains that the trial court's "Law of the Case" ruling prevented it from offering evidence of defenses to American Star's claim of damages under the operating agreement. However, nothing in the record indicates that S & J ever objected to the trial court's "Law of the Case" ruling. The only defensive evidence offered by S & J that was excluded by the trial court was evidence that a pumper was asked to drive around a well to make tracks. In addition, the trial court limited the scope of S & J's

---

[4] Further, to the extent that S & J was attempting to elicit this testimony to contend that the contract was illegal and unenforceable, we note that S & J's liability under the operating agreement was previously decided in our former Mandate. Thus, the validity of the operating agreement was not in issue in this remand.

questioning of Carroll Beaman, President of American Star, regarding certain drilling activities on the Bearkiller lease that may have been illegal.[5] However, in neither of these instances did S & J file a formal bill of exception or otherwise specify how it was denied the opportunity to present its defenses by the trial court's rulings. In other words, S & J failed to establish how it was harmed by these rulings of the trial court. Further, because S & J did not attempt to make a bill of exception at trial, we cannot say that it was prevented from properly presenting the case to this Court.[6] We may not reverse a judgment based on the exclusion of evidence unless we determine that the exclusion probably resulted in an improper judgment. Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004). As a result, we conclude that the trial court did not abuse its discretion and overrule S & J's second issue.

---

[5] We note that Beamon testified that he did not know whether gas was produced from the same zone as the oil as it relates to any of the wells. As a result, it is unlikely that Beamon's testimony could have established any illegal drilling practices.

[6] When counsel for S & J asked the trial court if S & J was not going to be allowed to present any defense, the trial court stated,

> I didn't say that, Mr. Warner. You can put on what you feel like you need to – I am not going to tell you how to try your case. I didn't tell you the last time, I am not going to tell you this time. You can put anything you desire to put on. If it's objected to, I will sustain the objection. If it's something that runs afoul of the Motion in Limine, you need to approach the Court. **If you desire at any time or at least I think at the end of the day or at the end of trial, to build your bill of review, the Court will give you ample time to get that done.** Certainly you have got a right to go ahead and defend the case as you see it (emphasis added).

Attorney's Fees

S & J's third issue is conditioned on our sustaining one of the issues addressed above.[7]  Since we have overruled each of S & J's first two issues, we need not address its third issue.  See TEX. R. APP. P. 44.1(a).

Conclusion

Having overruled each of S & J's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice

---

[7] In its brief, S & J states that "[i]f either of S & J Investments' first two points is sustained, the award of attorney's fees should be reversed and remanded."

-11-